# DAVID KIGES v. CITY OF ST. PAUL AND OTHERS.[1]

December 31, 1953.

No. 35,765.

[1]Reported in 62 N. W. (2d) 363.

*Murnane & Murnane,* for appellant.

*Timothy P. Quinn,* Corporation Counsel, and *Louis P. Sheahan,* Special Assistant Corporation Counsel, for respondents.

NELSON, JUSTICE.

Plaintiff instituted suit against the city of St. Paul and others to have a building permit declared valid, to enjoin the defendants

from interfering with the work of construction pursuant to a building permit issued to him on June 15, 1950, and to enjoin enforcement of a zoning ordinance adopted by the city council of St. Paul on February 6, 1951. The plaintiff obtained a temporary writ of injunction from the district court. After trial without a jury, the court handed down findings of fact, conclusions of law, and order for judgment in defendants' favor and dissolved the temporary writ of injunction. Following the dissolution order the plaintiff made alternative motions for amended findings of fact, conclusions of law, and order for judgment or for a new trial and also made a motion to vacate the order dissolving the temporary injunction. The court denied all motions of plaintiff and he filed his appeal therefrom.

The city of St. Paul, through its city council, enacted a comprehensive zoning ordinance which became effective August 22, 1922, known as St. Paul Building Zone Ordinance No. 5840. This was enacted under the authority of L. 1921, c. 217, which was later amended by L. 1923, c. 364. Building Zone Ordinance No. 5840 regulates the location of trades and industries and the location of buildings for specified uses for the general promotion of public health, safety, order, convenience, prosperity, and general welfare. It divided the city of St. Paul into six classes of use districts; namely, "A" residence district, "B" residence district, "C" residence district, commercial district, light industry district, and heavy industry district, and provided that no building or premises shall be erected or used for any purpose other than a purpose permitted in the use district in which the building or premises shall be located as provided in applicable regulations prescribed for such use districts.

Building Zone Ordinance No. 5840, § 23, as amended, contains the following provisions for the reclassification of real estate by amendments:

"Whenever the owners of 50% or more of the frontage on any street in any district or part thereof shall present a petition, duly signed and acknowledged, to the City Council requesting an amendment, supplement, change or repeal of the regulations prescribed for such districts or part thereof, * * * it shall be the duty of the

Council to vote upon said petition within 90 days after the filing of the same by the petitioners with the City Clerk; * * *.

*  *  *  *  *

"Such amendment shall not be passed where it will alter the regulations or plans herein contained, unless the owners of two-thirds of the several descriptions of real estate situated within one hundred feet of the real estate affected shall have acquiesced therein, and unless two-thirds of the full membership of the Council vote in favor thereof; * * *.

"* * * the proper filing of a sufficient petition for the amendment of this ordinance so that any district or portion thereof shall be thereby re-classified and placed in a more restricted district or a district of higher classification, with the requisite written acquiescence of the owners of adjacent property, pending the determination of the Council thereon, shall be deemed effectual to suspend the right to initiate any use in or upon the premises sought to be reclassified or any portion thereof which would not conform to the regulations hereby prescribed for the proposed reclassification."

Plaintiff had purchased lot 8, block 3, Midway Highland Park Addition, in the year 1949 for the sum of $3,500 for the purpose of erecting and operating a retail dry-cleaning establishment thereon. From August 22, 1922, until the year 1925, lots 1 to 15 inclusive in block 3, Midway Highland Park Addition, had been classified as "A" residence district, subject to all restrictions imposed by Building Zone Ordinance No. 5840 on premises so classified. In 1925 the governing authorities of the city of St. Paul, in mistaken expectation of commercial developments in that area, amended Building Zone Ordinance No. 5840 so that lots 1 to 15 inclusive in block 3 of the said addition were reclassified from "A" residence district to commercial district in respect to lots 1 to 8 inclusive thereof and from "A" residence district to "C" residence district in respect to lots 9 to 15 inclusive. This was the situation existing up to and including June 15, 1950, when the plaintiff applied for and obtained from the city of St. Paul a building permit for the construction of a proposed commercial building for use as a retail cleaning estab-

lishment on his lot under and subject to the provisions and limitations of St. Paul Building Code Ordinance No. 7210 as then amended.

On June 27, 1950, pursuant to Building Zone Ordinance No. 5840, § 23, a petition for rezoning of land including the plaintiff's lot, accompanied by the requisite acquiescence of property owners within 100 feet, was presented to the city council and filed with the city clerk. The first petition was duly referred to the board of zoning for investigation and a report back to the city council within 30 days. The area covered included lots 1 through 8, block 3, Midway Highland Park. The staff members of the city planning board conducted an investigation and reported to the board of zoning on July 10, 1950, that the singling out of a single block for rezoning might be construed as arbitrary, that the zoning in a large area was out of adjustment, and that a comprehensive plan would be more appropriate. On the basis of this report the board of zoning recommended that the first petition be denied but indicated that they would entertain a petition to rezone lots involved in the petition with the exception of lot 8 belonging to the plaintiff. A report of the recommendation of the board of zoning was never transmitted to the city council as provided for by Building Zone Ordinance No. 5840, § 23. The city council did not act because the recommendations of the board of zoning were never submitted to it. Plaintiff was not informed of the board's action.

The plaintiff had engaged a St. Paul contractor, Isador Goldetsky, who as his agent in compliance with Building Code Ordinance No. 7210 had applied and paid for the building permit from the department of public buildings June 15, 1950. After obtaining the permit, the contractor immediately ordered steel beams to the value of $230; a survey was made June 23, 1950, costing $15; and on July 8, or just prior thereto, approximately 23 trees were cleared from the premises. On July 6, the premises had been staked out and trenches for footing angles dug. The plaintiff intended to begin excavation July 8, 1950; but such work ceased when the contractor, Goldetsky, received a letter from the city architect, dated July 6,

stating that the permit was suspended until the city council could pass on the rezoning petition.

A second petition for rezoning of land including the lot of plaintiff was filed and presented to the city council on October 10, 1950. On this date counsel for the plaintiff appeared for the purpose of directing the attention of the city council to the status of the first petition; on the same date a withdrawal of the first petition was filed in the office of the city clerk. The second petition called for the rezoning of the area of land located generally both east and west of Cleveland avenue and south of Ford Parkway consisting of approximately 51 acres and including the land of the plaintiff. The staff of the city planning board informed the zoning board that the most proper zoning for the area was that proposed in the second petition and recommended that it be granted.

On November 29, 1950, a third petition was presented to the city council for the rezoning of land including the lot of the plaintiff. The second petition was never acted upon for on December 6, 1950, the commissioner of finance reported to the city council that the second petition was insufficient. The third petition took its regular course, and as a result an amendatory rezoning Ordinance No. 9670 was enacted February 6, 1951. Plaintiff recommenced the work of improving his property by employing hand labor for hand shovel digging for footings October 10, 1950. Two men were hired and paid $1.52 per hour. The work was again stopped by a letter from the city architect dated October 11, 1950. This occurred after the expiration of the 90-day limitation contained in § 23.

The St. Paul Building Code Ordinance No. 7210 then in force became effective May 22, 1930, and subject to certain amendments thereto has remained in operative force and effect ever since. Section 2-1 (a) thereof contains the following provision:

"Before proceeding with the excavation, construction, enlargement, alteration, repair, or removal of any building, wall, or structure * * * the owner or his agent shall first obtain a permit for such purposes from the Department of Public Buildings."

Section 2-3(c) contains the following provision:

"Any permit or approval which may be issued by the Commissioner of Public Buildings, but under which no work has been done above the foundation, for a period of 3 months from the time of the issuance of such permit or approval, shall expire by limitation."

The building permit issued under the provisions of the zoning ordinances as amended and the building code provisions as amended contains the following limitations and restrictions:

"To carry out the work specified in this permit on the following described property, subject to all rules and regulations of the issuing Department, provisions of the Building Code, all other ordinances of the City of Saint Paul, all other applicable rules, regulations, and provisions of law enacted and promulgated by municipal, state and/or federal authority, and may be revoked upon violation of any of the above stipulations."

On the 7th and 8th days of December 1950, work was done by the plaintiff in excavation of a basement area for the proposed building. This was more than five and one-half months after the issuance of the building permit and, if it was subject to limitation as provided in the building code as amended, it was more than two and one-half months after the building permit issued to the plaintiff had expired. Work was again stopped on December 8, 1950, when the owners of lot 7, block 3, in the Midway Highland Park Addition, located immediately adjacent to and south of the plaintiff's lot, commenced a district court action in Ramsey county against the plaintiff, alleging in their verified complaint that they had procured the filing of the first petition for rezoning June 27, 1950; that subsequent rezoning petitions had been filed; and that the plaintiff here had commenced construction of a building on his land and asking for declaratory and injunctive relief. The district court pursuant thereto issued its temporary restraining order on December 8, 1950, halting any further work. No work of construction was done thereafter. At no time had there been any work done above the founda-

tion in respect to the erection of plaintiff's proposed commercial building on the lot in question.

Following the filing with the city clerk of the third rezoning petition on November 29, 1950, the corporate counsel of the city of St. Paul on December 6, 1950, had advised the city council that further suspension of plaintiff's permit would be illegal, and plaintiff was allowed to proceed with construction, completing the excavation on December 8. The third petition was the same as the second petition except for the fact that it covered less territory. It included an area on which there was nothing except residence buildings and it was signed by owners of 50 percent of frontage on all streets involved, according to the requirements of Building Zone Ordinance No. 5840. (There is no dispute on this point.) The petition was acquiesced in by two-thirds of the owners of land within 100 feet of the outer perimeter of the entire area to be rezoned. The zoning board recommended granting the third petition on December 13, 1950, and following such recommendation a hearing before all property owners within 200 feet of the property affected was held December 27, 1950. The recommendation was carried by the members of the council present and voting unanimously.

Plaintiff paid $3,500 for the land under a land purchase contract. The evidence discloses that its commercial value was about $4,000 and its residential value from $1,200 to $1,800. The plaintiff testified that he had engaged Goldetsky as his contractor and that arrangements had been made to erect a building costing in the vicinity of $20,000. The total expenses up to and including December 8, 1950, incurred in such preparation and excavation as had been made upon the lot were $754.08, and plaintiff testified at the trial that he had contracted for steel beams at a cost of $230.

■ The parent authority for Building Zone Ordinance No. 5840 and the amendments thereto is to be found in the enabling act, L. 1921, c. 217, which was later amended by L. 1923, c. 364, L. 1925, c. 284, and L. 1937, c. 239, coded as M. S. A. 462.18. In considering the issues we may proceed from the premise that it has been established by all the leading authorities that ordinances dividing cities into residential and business districts and limiting use of realty in

each district to certain purposes will not be declared unconstitutional unless it affirmatively appears that the restriction is clearly arbitrary and unreasonable and without any substantial relation to public health, safety, morals, prosperity, or general welfare.

Zoning statutes have become common and zoning ordinances which are fair in their requirements are generally sustained as an exercise of the police power, which is legislative. Its policy is not for the courts. Only when its exercise constitutionally affects personal or property rights do the courts take cognizance, and it is presumed that the legislative body investigated and found conditions such that the legislation which it enacted was appropriate. The action of a city council in the zoning field, and the exercise of the police power by the city council, is legislative. The trend of the authorities is toward sustaining legislative regulations which exclude objectionable callings from interfering with the comfort and welfare of the community even without the creation of a residential district. As was said by Mr. Justice Dibell of this court in State ex rel. Beery v. Houghton, 164 Minn. 146, 150, 204 N. W. 569, 570, 54 A. L. R. 1012:

"* * * The police power, in its nature indefinable, and quickly responsive, in the interest of common welfare, to changing conditions, authorizes various restrictions upon the use of private property as social and economic changes come. A restriction, which years ago would have been intolerable, and would have been thought an unconstitutional restriction of the owner's use of his property, is accepted now without a thought that it invades a private right. As social relations become more complex restrictions on individual rights become more common. With the crowding of population in the cities there is an active insistence upon the establishment of residential districts from which annoying occupations and buildings undesirable to the community are excluded."

Since that decision in Minnesota, ordinances that comply with the enabling act that gave rise to zoning ordinances in cities of the first class cannot be successfully attacked on constitutional grounds unless there is affirmative proof that the restriction is clearly arbitrary, discriminatory, and unreasonable and without

any substantial relation to public health, safety, morals, or general welfare, thus violating constitutional inhibitions. State ex rel. Beery v. Houghton, *supra;* Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303, 54 A. L. R. 1016 (a leading case on zoning regulations).[2] An excellent exposition of the extent of the exercise of the police power is found in 3 Dunnell, Dig. (3 ed.) § 1603. The authorities uniformly sum up the rule to be that, if the validity of the legislative classification for zoning purposes be fairly debatable as it is here, the legislative judgment must be allowed to control.

■ The plaintiff contends that the failure on the part of the city council to act on the first petition for rezoning constituted a rejection of such petition and that therefore such failure must of necessity bring into operation that portion of Building Zone Ordinance No. 5840, § 23, as amended, which provides that no petition to rezone any property shall be filed or considered within six months after the council has rejected a like petition to rezone the same property. Three petitions to amend the zoning ordinance were filed. The first on June 27, 1950, the second on October 10, 1950, and the third on November 29, 1950. Plaintiff regards these dates

[2]Lombardo v. City of Dallas (Tex. Civ. App.) 47 S. W. (2d) 495; State ex rel. Carter v. Harper, 182 Wis. 148, 196 N. W. 451, 33 A. L. R. 269; American Wood Products Co. v. City of Minneapolis (8 Cir.) 35 F. (2d) 657; Zahn v. Bd. of Public Works, 274 U. S. 325, 47 S. Ct. 594, 71 L. ed. 1074; Dennis v. Village of Tonka Bay (8 Cir.) 156 F. (2d) 672; Leighton v. City of Minneapolis (D. Minn.) 16 F. Supp. 101; City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923; Pacific States Box & Basket Co. v. White, 296 U. S. 176, 56 S. Ct. 159, 80 L. ed. 138; Lee v. Delmont, 228 Minn. 101, 36 N. W. (2d) 530; Central Trust Co. v. City of Cincinnati, 62 Ohio App. 139, 23 N. E. (2d) 450; Brett v. Building Commr. of Brookline, 250 Mass. 73, 145 N. E. 269 (in which it was held that it was within the police power of municipality to create residence district in which only single-family dwellings could be constructed); Gratton v. Conte, 364 Pa. 578, 73 A. (2d) 381; Marblehead Land Co. v. City of Los Angeles (9 Cir.) 47 F. (2d) 528; Fox Meadow Estates, Inc. v. Culley, 233 App. Div. 250, 252 N. Y. S. 178.

as significant in the light of the building zone ordinance which provides that after petitions for rezoning are presented to the council:

"* * * it shall be the duty of the Council to vote upon said petition within 90 days after the filing of the same by the petitioners with the City Clerk; provided that no petition to rezone any property shall be filed or considered within six months after the Council has rejected a like petition to rezone said property."

Plaintiff contends that the requirement that the city council pass on the petition within 90 days must be strictly construed and that the unlawful failure of the city council to comply with that provision operates in law as a denial of the petition. The authorities cited by plaintiff for this proposition merely support the general rule of law that zoning ordinances must be strictly construed. He further contends that, since the council has rejected the first petition (by inaction), no other petition could have been properly filed within six months of such rejection. Here the second and third petitions were filed less than six months after the expiration of the 90-day period following the filing of the first petition.

We believe that plaintiff's contention is without merit. The city council relied upon the reports from the city planning commission and the zoning board before taking action. After due consideration they decided not to vote on the first petition but to file a second and finally a third pursuant to such recommendations as they received from the investigations of the planning commission and the zoning board. The council did not determine to act on the plan submitted until they reached the conclusion that the third petition met the requirements and only then did they deem it their duty to pass upon the petition by either adopting or rejecting it. These actions by the council merely involved changes of policy from time to time, and a mere change of policy, however unfortunate the result may be, will not justify the court in declaring zoning ordinances which are the legitimate exercise of police power to be void. Marblehead Land Co. v. City of Los Angeles, *supra.*

It would seem logical to assume that the failure to act with reference to the first petition merely caused the first petition to

expire with no adverse effects. The plaintiff had been notified on July 6, 1950, that the building permit which he had obtained from the city of St. Paul was suspended by order of the authorities due to the building rezoning petition. Since the council was acting under the police power and exercising its legislative duties, he should have known he would be proceeding at his peril until the suspension was withdrawn.

■ Plaintiff contends that there was not an acquiescence of two-thirds of the owners within 100 feet as required by Building Zone Ordinance No. 5840, § 23, as amended. His contention presents the question whether this provision requires the acquiescence of two-thirds of the owners within 100 feet of the outer perimeter of the entire area of land affected by that provision or whether it requires, as he contends, the acquiescence of two-thirds of the owners within 100 feet of individual areas of more restricted size within the total area to be rezoned. He does not state what such individual areas should be. If plaintiff's contention were to be followed, nothing but confusion could arise where areas are to be rezoned under use restrictions. This matter was under consideration in the case of Morrill Realty Corp. v. Rayon Holding Corp. 254 N. Y. 268, 172 N. E. 494, where it was held that the board of estimate, in redistricting city under zoning statute, was not required to proceed by separate resolution to zone block by block. The trial court in the instant case adopted the rule that the provision requires the acquiescence of two-thirds of the owners within 100 feet of the outer perimeter of the entire area of land affected by the zoning provisions, and we believe that this is the sound rule and the most logical construction of the ordinance. Where the language of a statute seems to embody a definite meaning, courts should not nullify obvious requirements by construction. Oppegaard v. Board of Commrs. 120 Minn. 443, 139 N. W. 949, 43 L.R.A.(N.S.) 936.

■ The plaintiff contends that the building permit was improperly suspended because he, as permittee, had made plans and begun improvements on his premises before receiving any notice of suspension and also had received his permit prior to the filing

of the first petition for rezoning. Building Zone Ordinance No. 5840, § 23, provides:

"That the proper filing of a sufficient petition for the amendment of this ordinance so that any district or portion thereof shall be thereby re-classified and placed in a more restricted district or a district of higher classification, with the requisite written acquiescence of the owners of adjacent property, pending the determination of the Council thereon, shall be deemed effectual to suspend the right to initiate any use in or upon the premises sought to be reclassified or any portion thereof which would not conform to the regulations hereby prescribed for the proposed reclassification."

When the above provisions are considered with Building Code Ordinance No. 7210, § 2-3(c), and the limitations and restrictions expressed on the permit itself it appears that, because of the suspension ordered by the city architect, the building permit had expired by limitation.

The council, after the filing of the first petition on June 27, 1950, was in the process of classification as to rezoning certain areas; and it is not for the court to examine into the good faith of the council in such proceedings unless they proceeded in an unreasonable, arbitrary, or discriminatory manner under established limitations upon the police power. There is nothing in the record to indicate anything done or any act or conduct outside of the suspension notices, which were given more than once. No authorities are cited to support the contention that the permit did not expire by limitation except the authorities which are to the effect that zoning statutes and ordinances shall be strictly construed. The trial court viewing the situation as a whole held that the building permit had expired by limitation. We concur with the holding of the court. Unless the plaintiff, through the preparation of the plans testified to and the construction of the building as far as it had gone, had gained a vested right of which he could not be deprived by the classification then under consideration and subsequent rezoning, the consideration of whether or not the building permit had expired would be moot. His right to prevail here must find its basis in a vested right which

he has gained and of which he cannot be deprived by the classification begun June 27, 1950, and the subsequent rezoning by ordinance amendment enacted February 6, 1951.

■ Plaintiff contends that under the provisions of Building Zone Ordinance No. 5840 and amendments thereto there can be no retroactive effect on his right to proceed under the building permit issued June 15, 1950, approximately twelve days prior to the filing of the first rezoning petition. It has already been stated that the provisions of Building Zone Ordinance No. 5840, § 23, state in effect that the proper filing of a sufficient petition for the amendment of the ordinance shall be deemed effectual to suspend the right to initiate any use in or upon the premises proposed for reclassification which would be nonconforming under such reclassification.

While a piecemeal method of altering zoning classification may frequently be undesirable in practice, it may, however, be the only way of protecting rights which must be recognized; and while all zoning regulations must be in accord with a general comprehensive plan, they should be made, as the statute provides, with a view to encouraging the most appropriate use of the land. Of course, a zoning ordinance must not be arbitrary, unreasonable, or discriminatory but zoning classifications are largely within the judgment of the legislative body and the exercise of that judgment will not be interfered with by the courts except in cases where it is obvious that the classification has no substantial relation to public health, safety, morals, or general welfare. Gratton v. Conte, 364 Pa. 578, 73 A. (2d) 381.

It was held in Brett v. Building Commr. of Brookline, *supra*, that a person to whom a permit for construction of a two-family dwelling had been issued *had no special immunity* and was affected by an amendment of a zoning bylaw not permitting two-family dwellings to be constructed in the district though he had started work pursuant to the permit, where he had not done enough work to have acquired a vested right; the fact that he had entered into a contract with a third person for construction of the building did not affect constitutionality of the bylaw; and excavation and engineering work

and forms constructed did not constitute an "existing structure" within the provision of the statute exempting such from zoning restrictions.

In City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 511, 272 P. 923, 928, under a somewhat similar set of circumstances as to permit and reclassification, it was said:

"'* * * As soon as the attempt was known, proceedings were immediately initiated and carried forward to establish the restricted district. To hold that under circumstances like this the city was estopped would mean that the governing authorities of municipalities, unless they foresaw in advance every condition which might arise and acted before the contingency occurred, would be helpless thereafter to meet the changed situation."

The court in that case further stated:

"It is also contended that plaintiff had vested rights which were entitled to protection. Although it had purchased the land in question and let the contract for the building before the ordinance was adopted, yet before any material amount of construction had actually been done, it was fully advised that the ordinance was under contemplation. Instead of awaiting the action of the council, it apparently proceeded on the theory either that the ordinance would not be passed, or that, if passed, it was void. Having taken that chance, it may not now be heard to set up any loss to it which arose from its actions *after* it had knowledge that the ordinance was being considered. But even if plaintiff suffered some damages through things occurring *before* the protest, financial loss, no matter how severe, does not of itself give parties a vested right to continue a business, no matter how long it has been conducted, if the business is one whose location may be regulated under the police power."

See, Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. ed. 348, Ann. Cas. 1917B, 927.

We are of the opinion that it does not appear affirmatively that the amendatory Ordinance No. 9670, enacted February 6, 1951, was so unreasonable, arbitrary, and discriminatory that it would have

been unconstitutional if it had been adopted before the plaintiff obtained the building permit and before he had commenced any preparation in clearing the ground or excavating for the building to be used as a retail cleaning establishment. The argument that the rezoning amendment was ineffective because it had no retroactive effect on the plaintiff's right to proceed cannot be sustained against the police power invoked here.

Plaintiff cites 9 Am. Jur., Buildings, § 8, to support his argument that, having incurred liabilities for work and material and having entered upon construction prior to the adoption of the amendment, he had acquired a vested right of which he cannot be deprived. That section, however, merely states that a building permit may not be *arbitrarily* revoked where the owner has incurred material expense in reliance upon the permit. A statement more pertinent to the question here is in 58 Am. Jur., Zoning, § 185, which reads as follows:

"A number of cases sustain the express or implied revocation of a building permit where, subsequent to its issuance, the city passes a valid ordinance which has the effect of prohibiting the erection of a building such as the one in question, and, under some decisions, this is true even though the grantee of the permit has entered into contracts, bought material, or incurred other expenses. This rule has been applied in the case of a subsequent zoning ordinance or amendment thereof, and it is held that the grant of a permit or license does not preclude the application thereto of a new zoning regulation prohibiting the erection of the building or the operation of the business in the particular zone. * * * *Such an application of zoning provisions has been held not to violate constitutional restrictions against* the retroactive application of legislation, or *the impairment of vested rights* * * *. Indeed, the same result has been reached in some cases notwithstanding that the permit holder had acquired title to the land, assumed obligations, and incurred expenses preliminary to construction, or had entered into contracts for the construction, and had actually commenced work thereon when the ordinance or amendment was enacted, at least where the work done prior to the amendment was not sufficient to constitute

an existing structure. A fortiori, expenditures made and obligations incurred after the enactment of the zoning ordinance or amendment, although in reliance on a permit previously issued, are insufficient to give a vested right to erect a building in violation of the ordinance." (Italics supplied.)

It must also be borne in mind that no work had been done above the foundation, for a period of three months from the time of the issuance of the permit. See, Building Code Ordinance No. 7210, § 2-3(c). The weight of authority sustains defendants' position that merely obtaining a building permit and incurring some expense and assuming obligations preliminary to construction, but proceeding no further than excavation, as was done here, is not sufficient to create a vested right to use premises for the purposes planned which cannot be cut off by subsequent amendment of the ordinance. Brett v. Building Commr. of Brookline, *supra;* City of Lansing v. Dawley, 247 Mich. 394, 225 N. W. 500; Fox Lane Corp. v. Mann, 216 App. Div. 813, 215 N. Y. S. 334; Dart v. City of Gulfport, 147 Miss. 534, 113 So. 441. It was held in the Dart case that a permit could be annulled by subsequent passage of a law prohibiting a thing previously granted, under the police power.

■ The plaintiff contends that, by virtue of a letter written to the city council by the city attorney regarding the questionable legality of the procedure followed on the first petition and the continuing suspension of the building permit, the city was estopped from further interference with his building plans. The city attorney is not a member of the city council and only acts in the capacity of its legal advisor. It is well established that the acts of a municipality relative to the issuance of building permits under zoning ordinances for the construction of commercial or residence property fall within its governmental rather than proprietary functions and that in consequence estoppel will not lie against it for its acts or those of its subordinates performed in connection therewith.[3] The

---

[3] W. H. Barber Co. v. City of Minneapolis, 227 Minn. 77, 34 N. W. (2d) 710; The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244; Edge v. City of Bellaire (Tex. Civ. App.) 200 S. W. (2d) 224; S. B.

situation here does not create an estoppel against the city which was acting in its governmental capacity at the time.

■ The trial court found that the amendatory Ordinance No. 9670 was within the scope of the comprehensive plan for the development of the city of St. Paul and that, as required by the statute and Building Zone Ordinance No. 5840, as amended, reasonable consideration was given to the topography and character of the district involved and its suitability for particular uses.

While this court must search the record to ascertain whether any erroneous rules of law have been applied and act accordingly, it must on appeal consider the testimony in the light most favorable to the prevailing party. When an action is tried by a court without a jury, its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly contrary to the evidence, and such rule applies whether the appeal is from a judgment or from an order granting or denying a new trial. Lipinski v. Lipinski, 227 Minn. 511, 35 N. W. (2d) 708. Where, as here, the question whether an ordinance is an unreasonable or arbitrary exercise of police power is fairly debatable, the amendment to the ordinance must be upheld as valid.

It seems to us that on this record the order of the trial court must be affirmed, for certainly the burden was on plaintiff to show that there was no reasonable basis for this ordinance.

Affirmed.

---

Garage Corp. v. Murdock, 185 Misc. 55, 55 N. Y. S. (2d) 456; Robinson v. City of Dallas (Tex. Civ. App.) 193 S. W. (2d) 821.