STATE EX REL. MELVILLE FOSTER AND ANOTHER v.
CITY OF MINNEAPOLIS AND ANOTHER.

97 N. W. (2d) 273.

May 1, 1959—No. 37,609.

*Brill & Brill,* for appellants.

*Charles A. Sawyer,* City Attorney, and *D. J. Shama,* Assistant City Attorney, for respondents.

THOMAS GALLAGHER, JUSTICE.

Mandamus proceedings for an order directing the Minneapolis building inspector to issue a building permit to Melville Foster and Mary B. Foster, hereinafter referred to as relators, permitting them to erect an office building on their premises described as Lots 1 and 2, Block 6, Thorpe Brothers Glenwood Heights Addition to Minneapolis. Relators acquired the premises in May 1954. At that time, and at all times since the adoption of the Minneapolis comprehensive zoning ordinance on April 7, 1924 (Minneapolis City Charter and Ordinances [Perm. ed.] 1:31), the premises were zoned as commercial property.

Involved herein is the validity of a Minneapolis ordinance adopted October 29, 1957, which amended the comprehensive zoning ordinance by rezoning the described premises as residential property. M. S. A. 462.18, under which the comprehensive zoning ordinance was adopted, provides that any city of more than 50,000 population may adopt a zoning ordinance; and that the governing body of a city which has adopted such an ordinance:

"* * * may thereafter alter the regulations or plan, such alterations, however, to be made *only after there shall be filed in the office of the city clerk a written consent of the owners of two-thirds of the several descriptions of real estate situate within 100 feet of the real estate affected,* and after the affirmative vote in favor thereof by a majority of the members of the governing body of any such city; * * *." (Italics supplied.)

(The italicized portion of the above quotation is hereinafter referred to as the "consent clause" of the statute.)

Prior to the adoption of the amendment of October 29, 1957, the written consent of the owners of two-thirds of the several descriptions of real estate situate within 100 feet of the premises affected had been filed in the office of the clerk of the city of Minneapolis. Based upon the reclassification covered by the amendment, the city building inspector denied relators' application for a permit to build an office building on their premises. These proceedings followed.

The trial court determined that the October 29, 1957, ordinance was in all respects valid and that the inspector of buildings properly

refused to issue the building permit described. Relators' petition was dismissed and the alternative writ quashed. In a memorandum attached to and made a part of its findings, the trial court stated:

"For the purposes of this case, the property must be regarded as having been commercially zoned until the passage of the amendatory ordinance. * * *

"The issues presented * * * are, first, whether the 'consent' provision is valid; and, second, whether the action of the Council was warranted as a reasonable exercise of its authority * * *. If the first question is answered in the negative, nothing remains of the case; * * *.

"* * * 'We are only questioning the validity of the statute in the case where a property owner's right under the ordinance to use his property for commercial purposes is taken away upon application of the neighbors under a statute which deprives the City Council of the right to do so regardless of circumstances without such consent of property owners in the vicinity.'

\* \* \* \* \*

"Respondents contend that the holding in Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. (2d) 363, * * * sets at rest any question as to its [§ 462.18] validity. This Court cannot completely share this view. The validity of the provision requiring the consent of residents was not raised in the Kiges case as applied to the facts of the case or otherwise, nor does it appear that the precise question has been raised in any Minnesota cases. * * *

\* \* \* \* \*

"It is the opinion of this Court, after attentive consideration to the matter, that the act of the petitioning residents, as it appears in this case, was purely a preliminary function conferring jurisdiction upon the Council to act within its discretion. The action of the petitioners did not determine whether the amendatory ordinance should be enacted. The power to do so rested solely within the Council in its legislative capacity and as such was not an unconstitutional delegation of authority. * * * It appears to this Court that required action by residents as a prerequisite step to council action is not a delegation of legislative power unless the council is so restricted that it is deprived of its legislative discretion with

respect to the matter in hand.

\* \* \* \* \*

"There are elements in the case which suggest that the action of the Council was an arbitrary and unreasonable exercise of power. The property had been zoned for many years as 'Commercial.' No attempt to build on the property has ever been made aside from the present proposed project of the relators. It is triangular in shape and is surrounded on all sides by highways. There is other commercial property of a very substantial nature nearby and there are indications that there will be further commercial development of a substantial nature in the immediate vicinity in the very near future. \* \* \* It seems fair to say that the property has no substantial value for residential purposes and that it is very unlikely it will ever be utilized for this purpose because of its somewhat unusual physical lay-out and its immediate proximity to traffic on all sides, \* \* \*."

This is an appeal by relators from the judgment subsequently entered in accordance with the trial court's determination.

■ We are of the opinion that the consent clause of § 462.18, as a prerequisite to the exercise of the city council's legislative authority to amend the comprehensive zoning ordinance, constitutes an unlawful delegation of power to impose restrictions on real property, and renders this provision of the statute invalid. It is well settled that a municipal corporation may not condition restricted uses of property upon the consent of private individuals such as the owners of adjoining property; and that it is an unreasonable exercise of police power to rest control of property uses in the hands of the owners of other property. Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189, 93 N. E. (2d) 632, 21 A. L. R. (2d) 544.

As stated in 37 Am. Jur., Municipal Corporations, § 162:

"\* \* \* Where an ordinance \* \* \* attempts to confer power on some property holders virtually to control and dispose of the property rights of others, and creates no standard by which the power thus given is to be exercised, so that the property holders who desire and have the authority to establish the regulations may do so solely for their own interests, or even capriciously, constitutional limits have been violated.

* * * The consent provision is an unlawful delegation of legislative authority and discretion, with no rule or standard to guide those whose decision will control."

■ In the instant case the consent clause in § 462.18 does not merely set in force an authorized power delegated to the council but in substance grants to adjoining owners the right to empower the council to act to impose property restrictions where otherwise it would have no such authority. As such, it is in contravention of U. S. Const. Amend. XIV. Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U. S. 116, 49 S. Ct. 50, 73 L. ed. 210; Eubank v. City of Richmond, 226 U. S. 137, 33 S. Ct. 76, 57 L. ed. 156; Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189, 93 N. E. (2d) 632, 21 A. L. R. (2d) 544.

■ Respondent relies upon Leighton v. City of Minneapolis (D. Minn.) 16 F. Supp. 101. There, plaintiff was denied a permit to erect a commercial building under the comprehensive zoning ordinance here involved because her property had been classified as "multiple dwelling" thereunder and she had failed to obtain the necessary consent of two-thirds of the several descriptions of real property situate within 100 feet of her premises to *enlarge* such classification by changing it to "commercial." But here relators were denied a permit to erect a commercial building upon premises *which at the time of their purchase were zoned "commercial"* because two-thirds of the adjacent property owners had instituted proceedings to empower the city council to rezone relators' property from "commercial" to "residential." Certainly a purchaser of real property is entitled to place some reliance upon zoning ordinances which have classified the property being purchased. As stated in Leighton v. City of Minneapolis (16 F. Supp. 106):

"* * * When zones are established, citizens buy and improve property relying on the restrictions provided by law. They have a right to the permanency and security that the law should afford."

■ The injustice of the situation under the attempted rezoning of relators' property here is evidenced by the fact that application of the rezoning ordinance has divested relators' property of all substantial value without compensation to relators. All this is brought about at the

instigation of two-thirds of the adjacent owners. Under the statute involved, no standard is required or set forth under which such power is to be exercised or placed in motion. Whim or caprice may be the sole motivating factor. We do not believe that such an enactment is valid. See, Eubank v. City of Richmond, *supra;* Kracke v. Weinberg, 197 Md. 339, 79 A. (2d) 387.

Judgment reversed and case remanded with directions that an order be issued directing the Minneapolis building inspector to issue relators a permit for construction of a commercial structure on the premises described.

### ON PETITION FOR REARGUMENT.

On June 19, 1959, the following opinion was filed:

THOMAS GALLAGHER, JUSTICE.

Our conclusions above are based upon and limited to situations such as presented here where (1) at the time of owners' purchase of property it was zoned "commercial"; (2) thereafter adjoining property owners, pursuant to M. S. A. 462.18, filed a "written consent" to have it rezoned from "commercial" to "residential"—a more restrictive classification; (3) the city council thereafter rezoned the property "residential" pursuant to the "consent" of adjoining property owners; and (4) the property was thereby divested of all substantial value. With this clarification, the petition for rehearing is denied.