## STATE EX REL. OSCAR BERNDT AND ANOTHER v. ROY ITEN AND OTHERS.

106 N. W. (2d) 366.

November 4, 1960—No. 37,992.

*William E. Crowder* and *Clarence O. Johnson,* for appellants.
*Howard, Peterson, LeFevere, Lefler & Haertzen,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment that a writ of mandamus be discharged.

The relators sought, by writ of mandamus, to compel the Village Council of Osseo, Minnesota, to grant them authority to construct a trailer park on property within the village.

On May 15, 1958, the village of Osseo adopted a comprehensive zoning ordinance under which the property in question here was zoned for manufacturing. In October 1958 relator Oscar Berndt discussed the possibility of erecting a trailer park on said property with the village clerk and the village attorney, both of whom indicated they did not see any objection to it. Relators proceeded to purchase a portion of the property and take an option on the balance. They contend that the property was purchased in reliance upon the information given by said village officers and in reliance upon the existing zoning ordinance, which did not specifically prohibit its use for residential purposes.

At that time there was in effect Osseo Ordinance No. 5-1957, which provided that a trailer camp could not be established in the village without first obtaining a license under an ordinance "heretofore or hereinafter enacted" by the council. Minn. St. 327.16 provides that a license must be procured from the State Department of Health in order to maintain and operate a trailer park. Subd. 3 thereof applies to the application for the first annual license and requires that said application "shall be accompanied by an approved permit from the municipality whereon the park is to be located, or a statement that the municipality does not require an approved permit; * * *."

On October 27, 1958, Berndt filed with the village a request for a license to operate a trailer park, or in the alternative, as contended by relators, a statement that no such permit was required, as provided

by § 327.16, subd. 3. The matter was submitted to the planning commission of said village. Further consideration was deferred by the council on November 10 and 24, 1958. On December 8, 1958, the report of the planning commission stating that the property was suitable for use as a trailer park was considered and the matter deferred to December 29, 1958.

On December 29, 1958, the village passed Zoning Ordinance No. 6-1958, which continued the "manufacturing" classification of relators' property but also prohibited its use for residential purposes except that of the residence of a watchman.

On December 30, 1958, relators petitioned for a writ of mandamus. On January 16 the parties agreed that relators would provide further plans and specifications to the council, which cost approximately $1,000.

On February 9, 1959, the village denied relators' application. It based the denial on the new ordinance of December 29, 1958, and, among other reasons, the feasibility of extending municipal water services to the trailer park; the safety hazards presented to the children due to the proximity of a railroad track on the north boundary and Highway No. 107 on the south boundary; the proximity of industry; the absence of street lighting; the absence of sidewalks; the presence of the electric highline overhead; and the presence of smoke, dust, fumes, and other industrial products. Also the community needed to broaden its tax base and not to further burden the school district which already was a so-called distressed school district under the law.

On April 17, 1959, relators exercised the option and purchased the remaining 1¼ acres. The tract purchased on October 23, 1958, was 3.01 acres and was purchased for $7,400. The consideration for the total tract, according to Berndt, was $20,200.

Relators present three basic contentions which are as follows:

(1) That the ordinance of December 29, 1958, which prohibited the use for residential purposes, was unconstitutional in that it was without substantial relation to the public health, safety, morals, and general welfare of the community.

(2) That if the ordinance is lawful, it cannot apply to relators since they had acquired a vested interest in the comprehensive ordi-

nance of May 15, 1958, which, as the trial court found, did not prevent the use of the property as a trailer park.

(3) That the action of the village in denying the application for a permit to operate a trailer park was arbitrary, capricious, and unreasonable.

■ With respect to the contention that the ordinance of December 29 is unlawful, the district court found that it was valid and subsisting at the time relators' application was denied. In its memorandum the court stated, "In the instant case there are considerations tending to show the reasonableness of the decision made by the council to exclude residential uses in the manufacturing zone and to deny petitioners' application." The court mentioned the following: The village is on the fringe of a large and growing metropolitan area and is surrounded on all sides by other incorporated municipalities. If the village is to have further manufacturing development within its boundaries, the council could reasonably determine that it must provide for the reservation of a suitable area for such development. The property in question is also distinctly separate from the balance of the municipality and there are already a number of manufacturing establishments in the vicinity of this property. Further, a mainline railway track runs along the northern boundary of said property, and in order to go directly from said property to shopping and other facilities of the village it is necessary to traverse the railway tracks and a complex highway intersection where Trunk Highways Nos. 152, 52, and 218 and two Hennepin County highways all intersect. Part of the vehicular traffic—that going north on Highway No. 152—is nonstop traffic. The court concluded: "From these facts the council could reasonably conclude that safety hazards and other problems would be created for persons, and particularly for children, who might reside on petitioners' property."

The justification for a zoning ordinance lies in the police power exerted in the public interest.[1] If the reasonableness of a zoning ordinance is debatable, the courts will not interfere with the discretion

---

[1]See Minn. St. 462.01 and 412.221, subd. 29, which confer the authority upon villages to regulate the use of property.

which is primarily the legislature's. Safety ranks among the purposes for the enactment of zoning ordinances. In determining their constitutionality it is presumed that the legislative body investigated and found conditions making the legislation which it enacted appropriate. See, 13 Dunnell, Dig. (3 ed.) § 6525(3, 5); 58 Am. Jur., Zoning, § 16; Connor v. Township of Chanhassen, 249 Minn. 205, 81 N. W. (2d) 789.

Under the record here it does not appear that the village council acted arbitrarily in prohibiting the use of the property for residences.

In People ex rel. Skokie Builders v. Village of Morton Grove, 16 Ill. (2d) 183, 188, 157 N. E. (2d) 33, 36, it was stated:

"* * * In short, *whether industry and commerce are excluded from the residential areas, or residences from industrial and commercial areas,* it is not unreasonable for a legislative body to assume that separation of the areas would tend in the long run to insure a better and a more economical use of municipal services, such as schools, providing police protection, preventing and fighting fires, and better use of street facilities." (Italics supplied.)

■ Relators claim a vested interest in the ordinance of May 15, 1958. Under some circumstances vested rights may be acquired as a result of existing zoning ordinances. See, 58 Am. Jur., Zoning, § 182; Huff v. City of Des Moines, 244 Iowa 89, 56 N. W. (2d) 54; David A. Ulrich, Inc. v. Town of Saukville, 7 Wis. (2d) 173, 96 N. W. (2d) 612. In Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. (2d) 363, this court held that where a building permit was acquired but construction proceeded no further than excavation, no vested rights to use the premises for the purposes planned existed which could not be cut off by a subsequent amendment of the ordinance.

The trial court here found that the ordinance of December 29 in so far as applied to relators' property was a valid and subsisting ordinance at the time their application was denied. Under the circumstances here, where a part of the property—constituting less than half of the total consideration—was purchased prior to the submission of an official application for a permit and in reliance upon statements of the village clerk and the village attorney; where an option to purchase

the balance of the property was not exercised until subsequent to a denial of the application; and where no building permits were applied for, nor actual construction begun, before the denial of the application, no vested rights were acquired in the ordinance zoning the property for "manufacturing."

In view of the foregoing a discussion of the third contention is unnecessary, except to say that an examination of the record here satisfies us that the action of the village council in denying the application for a permit to operate a trailer park was not arbitrary, capricious, or unreasonable.

Affirmed.