## T. JOSEPH OLSEN v. CITY OF MINNEAPOLIS.

115 N. W. (2d) 734.

June 1, 1962—No. 38,420.

*D. J. Shama,* Acting City Attorney, and *Paul T. Aitken,* Assistant City Attorney, for appellant.

*Josiah E. Brill, Jr.,* and *Brill & Brill,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by T. Joseph Olsen to compel the city of Minneapolis to grant his application for a permit for the erection and maintenance of a gasoline filling station on his property on the southwest corner of 58th Street and Penn Avenue South in Minneapolis.

The court made findings and ordered judgment in effect requiring the city to grant the application described. Defendant's subsequent motion for amended findings or, in the alternative, for a new trial was denied. This appeal by the city is from the judgment entered and from the order denying defendant's motion for amended findings or a new trial.

The city contends that the evidence is insufficient to support the trial court's finding that it had acted arbitrarily and capriciously in denying plaintiff's application; and that it had thereby deprived plaintiff of property and property rights without due process; and that the court was without jurisdiction to enjoin defendant from interfering with plaintiff's erection of the gasoline filling station on the plans and specifications approved by the building inspector of the city, and from interfering with the use thereof by plaintiff and his assignees, in the operation of such gasoline filling station. In substance, it contends that the evidence was sufficient to establish that the council had acted reasonably in denying plaintiff's application for the permit in that such evidence clearly indicated that traffic hazards, fire hazards, blight, devaluation of property, hazards to children, and detriment to the general health, safety, and welfare would result from the operation of a gasoline filling station on this property. With respect to such issues, the trial court found as follows:

"That ever since the 7th day of April, 1924, there has been in force and in effect in the City of Minneapolis a comprehensive zoning ordinance, by virtue of which the property of the plaintiff hereinbefore described was classified and zoned within the 'commercial'

district, which classification permits the erection and operation of a gasoline filling station, in addition to many other commercial uses.

"That shortly prior to the commencement of this action, plaintiff had prepared complete plans and specifications for the erection of such a building for the purpose of engaging in the retail gasoline filling station business. That he submitted the same to the Building Inspector of the City of Minneapolis, a person duly authorized by law to determine whether or not such plans and specifications complied with the building ordinances of said City, and on the 14th day of January, 1960, the said Building Inspector, through one of his duly authorized representatives, approved said plans and specifications but refused to issue a permit for the erection of said building unless and until the City Council of the City of Minneapolis granted a Special Council Permit therefor required by the ordinances aforesaid.

"That at or about the same time, the plaintiff submitted said plans and specifications to the Fire Marshal of the State of Minnesota for approval pursuant to State statutes governing such matters and the same was duly approved by said Fire Marshal.

"That at or about the same time, said plans and specifications were duly submitted by the plaintiff, pursuant to ordinance, to the Minneapolis Fire Department, Fire Prevention Bureau, and the same were duly approved.

"That at or about the same time said plans and specifications were submitted by the plaintiff, pursuant to ordinance, to the department of the City Engineer of the City of Minneapolis and the same was duly approved with respect to the matters of traffic and sidewalks.

"That said plans and specifications comply in all respects with all statutory and ordinance provisions applicable to such matters.

\* \* \* \* \*

"That, at the time plaintiff made application for a Special Council Permit, the manner of delivery and storage of inflammable liquids, including gasoline and oil, was fully regulated by the Statutes of the State of Minnesota and under such statutes by the order of the Fire Marshal, and his determination that the plans and specifications of the plaintiff complied with statutory requirements is conclusive between these parties on the question of possible fire hazard.

"That under circumstances substantially the same as those under which plaintiff's application was denied, the City Council of the City of Minneapolis has heretofore granted a great many Special Council Permits for the erection and operation of gasoline filling stations in the City of Minneapolis; there had been arbitrary and capricious discrimination between plaintiff and other applicants to whom such permits were granted, thereby denying plaintiff equal protection under the law as required by the State and Federal Constitutions.

"That many, if not all, of the commercial uses (other than gasoline filling stations) that are permitted under the zoning ordinance would create problems more serious with respect to traffic than those problems, if any, which would exist if a gasoline filling station is permitted at this location. * * *

"That the erection of a gasoline filling station on the premises herein involved would increase the traffic to a negligible degree * * * and * * * any such increase would be less than the increased traffic brought about by many other types of commercial uses authorized under the zoning law; * * *.

"That the use of said premises for a gasoline filling station would not materially increase the hazard to school children or to pedestrians, nor to vehicles or to persons in vehicles.

"That the erection and operation of a gasoline filling station of the type set forth in plaintiff's application for a Special Council Permit and as described by the testimony of witnesses in this action will not constitute a nuisance.

"That the effect on the market value of adjoining property resulting from the erection of a gasoline filling station on the premises herein involved would be of a very minimum character * * * no more than should justly be expected by one erecting a residence in a commercial district or immediately adjacent thereto.

"That the denial of said application by the City Council * * * was arbitrary, unreasonable, invalid and in violation of the plaintiff's constitutional rights for the following reasons:

*   *   *   *   *

"(b) That the use of said land for such purpose would not be

6

harmful to the health, morals, safety or public welfare of the community;

"(c)   That it would not constitute a fire hazard or a traffic hazard to have said land used for such purpose;

"(d) That in actual practice the said City Council * * * has * * * over a period of years granted Special Council Permits for the erection and operation of retail gasoline filling stations in the City of Minneapolis under circumstances substantially the same as the circumstances under which the plaintiff's application for such a permit was denied;

"(e) That the denial of said petition deprives plaintiff of his constitutional rights contrary to Section 7 of Article I and Section 13 of said Article I of the Constitution of the State of Minnesota and of the Fourteenth Amendment to the Constitution of the United States of America;

"(f) That the denial of said petition takes plaintiff's property without just compensation first paid or secured, contrary to Article 1, Section 13 of the Constitution of the State of Minnesota."

In its conclusions, the court determined:

"That the action of the City Council of the City of Minneapolis in denying plaintiff's application * * * was unreasonable, capricious, confiscatory, arbitrary and void.

"That the action * * * denied plaintiff equal protection under the law in violation of the constitutional provisions of both the State of Minnesota and the United States."

The court thereupon ordered that:

"The defendant, its agents and officers be enjoined from interferring with the erection by the plaintiff of the improvements set forth in the plans and specifications approved by the Building Inspector of the City of Minneapolis and from interferring with the use, and occupancy thereof, either by plaintiff, his tenants, assignees, or transferees, when erected for the purpose of engaging in the operation of a retail gasoline filling station."

■ It is undisputed that under the comprehensive zoning ordinance

of Minneapolis, upheld by this court in State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012, plaintiff's property is presently zoned for commercial purposes. The original zoning ordinance was enacted under and pursuant to L. 1921, c. 217, § 1, as amended by L. 1923, c. 364, § 1. The present statute, Minn. St. 462.18, provides:

"For the purpose of promoting the public health, safety, order, convenience, prosperity and general welfare, any city of the first class in the state acting by and through its governing body, may by ordinance regulate the location, size, and use of buildings, the height of buildings, the arrangement of buildings on lots, and the density of population therein, may make different regulations for different districts thereof, and may acquire or prepare and adopt a comprehensive city plan for such city or any portion thereof for the future physical development and improvement of the city, in accordance with the regulations made as aforesaid, and may thereafter alter the regulations or plan, such alterations, however, to be made only after there shall be filed in the office of the city clerk a written consent of the owners of two-thirds of the several descriptions of real estate situate within 100 feet of the real estate affected,[1] and after the affirmative vote in favor thereof by a majority of the members of the governing body of such city * * *."

Under the comprehensive zoning ordinance of defendant, Minneapolis City Charter and Ordinances (Perm. ed.) 1:31, all property within the city is classified as to location, size, use, and height of buildings, their arrangement on lots, and density of population. This ordinance was amended March 12, 1929, to include property within the boundaries of Richfield annexed by the city in 1927, wherein plaintiff's property is located. Plaintiff's property is thereby classified for commercial use.

Section 5 of the zoning ordinance provides as follows:

"In the Commercial District all buildings and premises, except as

---

[1]See, State ex rel. Foster v. City of Minneapolis, 255 Minn. 249, 97 N. W. (2d) 273.

otherwise provided in this ordinance, may be used for any use permitted in the Multiple Dwelling District or for any other use except the following: [listing 32 exclusions]."

Gasoline filling stations are not listed within the exclusions. However, after enactment of the zoning ordinance in 1924, the defendant's city council adopted an ordinance, Minneapolis Code of Ordinances, § 220.010, commonly called the Special Permit Ordinance, which provides in part:

"No person shall hereafter build, re-build, enlarge, alter, place, keep, use or maintain, within the City, any structure or premises for any of the following described occupations, industries or uses, unless such person shall have first obtained permission from the City Council so to do:

\*   \*   \*   \*   \*

"Gasoline filling stations \* \* \*."

It was under this latter ordinance that the city council acted here in denying plaintiff's application for permit to build and maintain the gasoline filling station on his property at 58th Street and Penn Avenue South zoned for commercial use.

If the basis of the council's denial of plaintiff's application was that a gasoline filling station at this location would constitute a nuisance, there would have to be a finding to this effect. In deciding this question, the council does not have authority to deny a special permit merely because it may disagree with some preceding council in its determination that classification of plaintiff's property under a zoning ordinance for commercial purposes was justified. The council as now constituted is bound by the comprehensive zoning classification, subject only to the exception that, if there is evidence that a nuisance will result from a commercial use in a particular neighborhood, in its discretion it may deny an application for special permit to conduct a business which would constitute a nuisance there.

■ On this question, it is of some significance to note that this court has held that the operation of a gasoline filling station does not of itself constitute a nuisance. Thus, in Crescent Oil Co. v. City of Minneapolis, 175 Minn. 276, 278, 221 N. W. 6, 7, it was stated:

"* * * Filling stations are a necessity in modern motor traffic. The keeping of an oil supply upon the premises of auto users would be an intolerable source of inconvenience and of danger. Filling stations are usually well kept. They are not resorts for objectionable people. They are not loafing places. They are not of the character of many lines of business which easily tend to become nuisances."

We again stated in a subsequent appeal in this case, Crescent Oil Co. v. City of Minneapolis, 177 Minn. 539, 540, 225 N. W. 904, 905:

"The trial court correctly held * * * that the business of conducting a gasolene filling station was not of a questionable nature and was not apt to become a nuisance; was neither hurtful nor pernicious but of a useful character and a necessity in these days of heavy motor traffic."

■ Whether the gasoline filling station here proposed would constitute a nuisance in the neighborhood described does not appear to be an issue in the present proceedings. The point is not argued in the city's brief nor was it urged during the trial of the case. Counsel for defendant stated in open court that "there's no claim there's any nuisance here." Plans and specifications indicate that every effort has been made to make the station attractive and to shut it off from adjoining property. Its hours of operation will be limited, minimum lighting extending directly only to the perimeter of the premises will be installed, and offensive odors will be eliminated through modern equipment. No heavy repair work will be permitted on automobiles, and no used or new tires will be stored outside the station. Under these circumstances the court was justified in finding that the erection and operation of the station "will not constitute a nuisance" and that other commercial uses authorized under the zoning ordinance, without special permit, would be more oppressive and create greater inconveniences and hazards in the neighborhood. Further, it seems unlikely that the city could validly advance the "nuisance" claim in view of the fact that it has approximately 2,000 filling stations within its boundaries, many of which admittedly are in close proximity to schools, playgrounds, and residential structures.

■ Regarding fire, traffic, health, and safety hazards, which the city contended would follow if the permit were granted, it appears quite definitely that the city's claims were not established. The applicable rule here does not differ from that as to findings of fact of a district court in other types of litigation. It is expressed in Kiges v. City of St. Paul, 240 Minn. 522, 539, 62 N. W. (2d) 363, 374, as follows:

"While this court must search the record to ascertain whether any erroneous rules of law have been applied and act accordingly, it must on appeal consider the testimony in the light most favorable to the prevailing party. When an action is tried by a court without a jury, its findings of fact are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly contrary to the evidence, and such rule applies whether the appeal is from a judgment or from an order granting or denying a new trial. Lipinski v. Lipinski, 227 Minn. 511, 35 N. W. (2d) 708."

See, also, Gunderson v. Anderson, 190 Minn. 245, 251 N. W. 515.

■ At the trial the testimony of expert witnesses and other evidence was submitted with respect to the issues described. We have carefully examined all of such evidence and conclude that therein the trial court's findings have adequate support. Mr. Alfred C. Godward, a civil engineer with experience in the field of land development and planning, who had served defendant city in various capacities including that of park engineer, planning engineer, traffic engineer, engineer of the Board of Estimate and Taxation, and consulting engineer to the Minneapolis Housing Authority, and who had been active in behalf of the enactment of the original comprehensive zoning ordinance here involved, testified that the operation of a filling station at the proposed site would not interfere with traffic to any great extent if approximately 120 cars were to be serviced there each day; that with present-day equipment and methods of operation fire hazards have been almost completely eliminated; that the glare from station lighting has been eliminated by modern lighting fixtures; that access to and from gasoline stations has been so regulated by city ordinance that traffic hazards have been reduced to a minimum;

that today gasoline stations constitute one of the very acceptable uses for property zoned as commercial; and that a gasoline station would not interfere with traffic to as great an extent as would many other commercial uses for which no permit would be required.

With respect to other claimed hazards, the evidence established that the specifications for plaintiff's gasoline station had been approved by the state fire marshal under Minn. St.. 73.171 and that the fire prevention bureau of defendant city had approved them as a prerequisite for the special permit. Sergeant Gerald E. Willar, a member of the Minneapolis Police Department, called by the city, testified that any interference with traffic from a gasoline station such as here proposed would be hardly noticeable and in any event negligible. With reference to school hazards (Armatage School is approximately 400 feet from the proposed gasoline station), Sergeant Walter Helin of the Minneapolis Police Department testified that he has been with the department for 20 years and that for the past 12 years he has been in charge of school safety patrols for the city and during all that time he had never known or heard of a child being injured because of traffic around a gasoline filling station.

■ The trial court's findings, amply supported by the evidence described, make it clear that the city had no sound basis for circumventing the uses and classifications of property prescribed and authorized under the comprehensive zoning ordinance. The ordinance must govern except where it is shown by competent and reliable evidence that because of special circumstances a nuisance will result from the use of property in a certain location in the manner otherwise authorized. But here it seems obvious that the city's underlying motive in denying plaintiff the permit was its conclusion that the operation of a gasoline filling station in the location described would violate the "neighborhood concept" which it sought to insure. The determination of plaintiff's rights on such a basis cannot be permitted. It is settled that purely aesthetic considerations do not form a sound basis for nullifying or destroying definite or valuable interests in property without compensation therefor to the owner. State ex rel. Lachtman v. Houghton, 134 Minn. 226, 158 N. W. 1017, L. R. A. 1917F, 1050; Jefferson County v. Timmel, 261 Wis. 39, 51 N. W. (2d)

518; Siegel v. Adams (Fla.) 44 So. (2d) 427. One who has acquired property zoned for particular purposes under a comprehensive zoning ordinance should be entitled to rely thereon as against the arbitrary enactment of amendments thereto which result in the diminution in value or the restriction of his rights and interests in such property. State ex rel. Foster v. City of Minneapolis, 255 Minn. 249, 97 N. W. (2d) 273; State, by Lord, v. Pahl, 254 Minn. 349, 95 N. W. (2d) 85; Binder v. Village of Golden Valley, 260 Minn. 418, 110 N. W. (2d) 306; Phipps v. City of Chicago, 339 Ill. 315, 171 N. E. 289; Western Theological Seminary v. City of Evanston, 325 Ill. 511, 156 N. E. 778; Id. 331 Ill. 257, 162 N. E. 863; Evanns v. Gunn, 177 Misc. 85, 29 N. Y. S. (2d) 368, affirmed, 262 App. Div. 865, 29 N. Y. S. (2d) 150; Matter of Dubow v. Ross, 175 Misc. 219, 22 N. Y. S. (2d) 610; Matter of Pelham View Apts. v. Switzer, 130 Misc. 545, 224 N. Y. S. 56; City of Coldwater v. Williams Oil Co. 288 Mich. 140, 284 N. W. 675; Sandenburgh v. Michigamme Oil Co. 249 Mich. 372, 228 N. W. 707; Vine v. Zabriskie, 122 N. J. L. 4, 3 A. (2d) 886; Clifton Hills Realty Co. v. City of Cincinnati, 60 Ohio App. 443, 21 N. E. (2d) 993; State ex rel. Schroedel v. Pagels, 257 Wis. 376, 43 N. W. (2d) 349; Rosenberg v. Village of Whitefish Bay, 199 Wis. 214, 225 N. W. 838; Wasilewski v. Biedrzycki, 180 Wis. 633, 192 N. W. 989. While it is true that a number of courts have held that the issuance of a permit to erect a structure for a permitted use under a zoning ordinance does not create a vested right that cannot be cut off by subsequent amendment, Matter of Fox Lane Corp. v. Mann, 216 App. Div. 813, 215 N. Y. S. 334; Brett v. Building Commr. 250 Mass. 73, 145 N. E. 269; City of Lansing v. Dawley, 247 Mich. 394, 225 N. W. 500, we feel that in justice the better rule is to give full accord to the rights of property owners based upon interests therein arising out of comprehensive zoning ordinances.[2]

---

[2]In Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. (2d) 363, involving a comprehensive zoning ordinance which included plaintiff's property, it was held that a building permit issued to plaintiff prior to passage of an ordinance rezoning his property did not create any vested rights where he had not commenced excavation under the permit until 5½ months after its issuance, and where the building code ordinance provided

In conclusion the court's language in White's Appeal, 287 Pa. 259, 266, 134 A. 409, 412, 53 A. L. R. 1215, seems particularly applicable here. There it was stated:

"* * * the power to * * * regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic considerations: * * *."

Based upon the foregoing principles and under the facts outlined, it must follow that the trial court's determination finds adequate support and that accordingly the order and judgment appealed from must be affirmed.

Affirmed.

---

that the permit would expire if no work had been done above the foundation within 3 months. Whether plaintiff had vested rights under prior comprehensive zoning ordinance was not determined. Later in State ex rel. Berndt v. Iten, 259 Minn. 77, 106 N. W. (2d) 366, this court recognized the principle that under certain circumstances vested rights may be acquired as a result of existing zoning ordinances, citing 58 Am. Jur., Zoning, § 182; Huff v. City of Des Moines, 244 Iowa 89, 56 N. W. (2d) 54; David A. Ulrich, Inc. v. Town of Saukville, 7 Wis. (2d) 173, 96 N. W. (2d) 612. In State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 70 N. W. (2d) 404, on the issue of financial loss arising from zoning ordinance where owner had acquired property *after* zoning ordinance had gone into effect, it was held that he was presumed to have acquired it with full knowledge of such ordinance. In State ex rel. Foster v. City of Minneapolis, 255 Minn. 249, 97 N. W. (2d) 273, this court cited Leighton v. City of Minneapolis (D. Minn.) 16 F. Supp. 101, wherein, with reference to Minneapolis Comprehensive Zoning Ordinance, the Federal District Court had stated (255 Minn. 253, 97 N. W. [2d] 276): "* * * When zones are established, citizens buy and improve property relying on the restrictions provided by law. They have a right to the permanency and security that the law should afford."