**Doris COOLEY, Plaintiff,**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**Civ. No. 73–193.**

United States District Court,
E. D. Oklahoma,
Civil Division.

March 26, 1974.

On Motion for New Trial June 10, 1974.

---

G. W. Dugger, McAlester, Okl., for plaintiff.

Richard Pyle, U. S. Atty., Muskogee, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

The Plaintiff Doris Cooley seeks review by this Court of the Defendant's denial of disability benefits under 42 U.S.C.A. § 402(g) for mother's insurance benefits. The Defendant has filed an Answer and attached thereto the Transcript of the record, including the evidence upon which the findings and decision of the Secretary of Health, Education and Welfare are based.

The Plaintiff was married to Melvin K. Cooley on June 4, 1963. She had previously been married twice and had two children by Herman Lefors, her second husband. Her first marriage terminated by divorce and the second marriage to Mr. Lefors terminated by his death. The issue here is whether the Plaintiff is entitled to mother's insurance benefits based on the earnings record of Melvin K. Cooley, deceased, wage earner and Plaintiff's third husband. A short synopsis of the testimony of the claimant shows that the Plaintiff married Melvin K. Cooley in 1963; that they lived in several different towns in Texas; that he had a drinking problem. They had no children but he supported her two children, Pamela and Herman Lefors. In 1964, the Southeastern Drilling Company of Abadan, Iran, offered Mr. Cooley employment overseas as a diesel mechanic. The Plaintiff was supposed to follow in four months but because of his drinking problem, Plaintiff went earlier

and stayed in a city near the camp where the deceased was working. The deceased would drink excessively and become violent and, at times, had guns in his possession, and the Plaintiff finally came home. Thereafter, the deceased followed Plaintiff home and prevailed upon her to return. They started back to Iran in September of 1966. The deceased had threatened her with a rifle or pistol several times. On November 28, 1966 in Iran, the deceased began drinking and cursing the Plaintiff. The Plaintiff testified that the deceased had a gun and pointed it at the Plaintiff and she attempted to grab it and the gun went off. The deceased staggered, fell down and was dead on arrival at an Army hospital. The Plaintiff was arrested, indicted for murder and arraigned by the Iranian authorities on November 28, 1966. She was tried and convicted for voluntary murder and sentenced to ten years imprisonment on November 7, 1967. On February 10, 1968, the Second Bench of the Iranian Supreme Court sustained the conviction and sentence of the lower court. The Plaintiff was represented by an attorney, Dr. Ibrahim Pad in the Iranian proceedings. The Imperial Majesty granted amnesty, reducing Plaintiff's sentence to two years solitary confinement, and she was released from prison on November 16, 1969. Articles 57 and 58 of the Iranian Penal Code state that the crime will be expunged from her record (Tr. 273). However, her Iranian attorney states such expunging will not take place until ten years after her release (Tr. 293).

Plaintiff's position is that under our Constitution, she was denied due process because the conviction was obtained by statements made by her after many hours of interrogation; that she remained in custody for almost a year without a trial, and that the court failed to allow cross-examination by her attorney of witnesses against her, and the conviction cannot stand to deprive her of the mother's insurance benefits. The Plaintiff also maintains the Royal Amnesty was the same as a full pardon.

The Hearing Examiner found that the Plaintiff was married to Melvin K. Cooley, deceased, and was his wife at the date of his death; that he had met the earnings requirement but that Plaintiff would not be entitled to the mother's insurance benefits because of Regulation No. 4 of the Social Security Administration, Sub-part D, Section 404.364, which provides: "A person who has been finally convicted by a court of competent jurisdiction of the felonious and intentional homicide of an insured individual shall not be entitled to monthly benefits or to the lump-sum death benefit based on the earnings of such deceased individual and such felon shall be considered nonexistent in determining the entitlement of other persons to monthly benefits or lump-sum death payment based upon the deceased's individual earnings." This decision was affirmed by the Appeals Council and became the decision of the Defendant herein.

In reviewing the Transcript, there is included therein the translation of sections of the Iranian Penal Code which show the crime was a felony (Tr. 69–70) and a letter from Plaintiff's lawyer, Ibrahim Pad, (Tr. 290–293) which indicates that the reduction of sentence to two years did not restore the civil rights to the Plaintiff under the Iranian Law and that the record would not be expunged until ten years after the two year sentence had expired.

Every sovereign state must recognize the independence of every other sovereign state and the courts of one will not sit in judgment upon the acts of the government of another done within its own territory. *Underhill v. Hernandez*, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897); *United States v. Belmont*, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134 (1937). It is true that one state will not enforce the penal laws of another state. *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). A penal law is a law, the purpose of

which is to punish an offense against public justice of the state rather than to afford a private remedy to a person injured by a wrongful act. *Huntington v. Attrill, supra.* The general rule is that things done in one sovereignty in pursuance of the law of that sovereignty are regarded as valid and binding everywhere, and, vice versa, things invalid where done are invalid everywhere. 16 Am.Jur.2d, *Conflicts of Law*, Sec. 4, p. 11; *Davis v. Davis*, 269 N.C. 120, 152 S.E.2d 306. Although a violation of a penal law is involved herein, there is not a request to enforce it but a request by an individual to refute it. The conviction in Iran was based on and pursuant to the laws of Iran and therefore is a valid conviction.

■■ The Plaintiff claims that it is against public policy and without due process to deny the benefits to her based upon her Iranian conviction. This is not true as the Iranian conviction is based upon a law prohibiting homicide which is not against the public policy in the United States. It is true that a foreign "act of state" will not be given effect against property in this country if it is inconsistent with the public policy and laws of the United States and it will not be recognized or enforced. *Republic of Iraq v. First National City Bank*, 2 Cir., 353 F.2d 47, cert. denied, 382 U.S. 1027, 86 S.Ct. 648, 15 L.Ed.2d 540. But, as stated, that is not the case here. The public policy and laws of the United States prohibit homicide. Thus, the Iranian conviction for homicide is not against public policy or laws in this country. The conviction in Iran was one where the court had jurisdiction of the case and of the parties and became a final judgment when the conviction was affirmed by the Second Bench on appeal. The test here is the final conviction, not the local procedures by which it was accomplished.

■ The Appeals Council considered additional evidence concerning a Judgment rendered March 13, 1973, in a civil action in the District Court of Dallas County, Texas. This Judgment appears to relate to a finding in a dispute over the proceeds of a life insurance policy wherein the jury found from a preponderance of the evidence that Plaintiff did not wilfully bring about the death of Melvin Cooley. The issue herein is not the same as in the Texas civil action. Herein the issue is whether Plaintiff "has been finally convicted by a court of competent jurisdiction of the intentional homicide of an insured individual." It is not Defendant's prerogative to look to the merits of a conviction, but merely that one exists. To overlook the criminal conviction on the basis of the Texas civil decision would amount to considering the merits of the same. The Defendant did not err in upholding the denial of benefits after considering the Texas civil judgment.

There is substantial evidence to support the denial of disability, 42 U.S.C.A. § 405(g); *Gardner v. Bishop*, 362 F.2d 917 (Tenth Cir. 1966), and the denial was in accordance with law. The action should be dismissed. Counsel for Defendant will prepare and submit an appropriate Judgment based on the foregoing.

### ON MOTION FOR NEW TRIAL

On March 26, 1974, the Court entered herein a Memorandum Opinion in which it was concluded that there was substantial evidence to support the denial of disability benefits to the Plaintiff under 42 U.S.C. § 402(g), that the decision of the Secretary of Health, Education and Welfare (Secretary) should be affirmed and this action should be dismissed.

The Court now has under consideration Plaintiff's Motion For New Trial which is supported by a Brief. The Defendant opposes the Motion by a Response thereto with supporting Brief.

In Plaintiff's Motion For New Trial two points are raised. They are substantially as follows:

1. In her criminal conviction in Iran Plaintiff was not afforded the

same facets of due process she would have received had she been charged and convicted in the United States, therefore, the Secretary cannot afford full faith and credit or comity to the Iranian conviction and on the basis thereof deny her benefits under 42 U.S.C. § 402(g).

2. Plaintiff's Iranian conviction was not for an intentional homicide, therefore, the same was improperly used to deny her benefits under the above Statute.

The Court has heretofore considered these points, has determined them to be without merit, both legally and factually, and thereupon indicated by Memorandum Opinion that the decision of the Secretary in his denial of said benefits to the Plaintiff because of her Iranian conviction for the homicide of her husband, the insured individual, should be affirmed and this action dismissed. However, in consideration of the Motion For New Trial the Court will elaborate further on these two points.

In its Memorandum Opinion of March 26, 1974 the Court recited that things done (such as a criminal conviction) in one sovereignty (Iran) in pursuance of the laws of that sovereignty (Iran) are regarded as valid and binding everywhere, citing 16 Am.Jur.2d, Conflicts of Law, § 4, p. 11. The Court further stated in said Memorandum Opinion that Plaintiff's conviction in Iran was based on and accomplished pursuant to the laws of Iran and therefore is a valid conviction here and was properly regarded as such in this case by the Secretary. The Court also said that the test here is the final conviction in Iran, not the local (Iranian) procedures by which it was accomplished.

Plaintiff disagrees with the foregoing and insists that because Iran did not afford Plaintiff the very same facets of due process which this country affords in its criminal process, the Secretary erred in denying the benefits to the Plaintiff because of her Iranian conviction for the homicide of her husband, the insured individual.

Plaintiff relies on *Griffin v. Griffin*, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946). This case is not in point. *Griffin* stands for the proposition that a judgment obtained in a jurisdiction *in violation of its own procedural due process* is not entitled to full faith and credit when sued upon (or used) in another jurisdiction. Plaintiff does not contend that she was not afforded Iranian due process. Plaintiff contends that Iran did not afford her the same due process as is prescribed and afforded in the United States in its criminal process.

The early case of *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), held that a French judgment should be given validity in the United States even though plaintiff in France was allowed to testify without oath or cross examination which was in accordance with the laws and practices of France (and not in accordance with the laws and practices of the United States).

47 Am.Jur.2d, Judgments, § 1247, p. 246 states:

"§ 1247.—Judgments of foreign nations.

The recognition to be accorded a foreign judgment is not necessarily affected by the fact that the procedure in the courts of the country in which such judgment was rendered differs from that of the courts of the country in which the judgment is relied on."

"However, to give a judgment rendered by a court of another nation full recognition, its proceedings must have been conducted with no flagrant departure from the ordinary course of judicial procedure, but, on the contrary, according to the course of a civilized jurisprudence likely to secure an impartial administration of justice. In this connection, it has been de-

clared that the judgment must have been rendered upon due allegations, proofs, and opportunity to defend against the same."

*Hilton v. Guyot, supra,* is cited as the pertinent authority for the above statement.

◼ In this connection, the Court will take judicial notice of the Treaty of Amnity, Economic Relations and Counsular Rights between the United States of America and Iran, 8 U.S.T. 901 (1955), which treaty was in force at the time of the homicide of the insured individual and Plaintiff's Iranian criminal proceedings which are involved in this case. The rights thereunder to be afforded the Plaintiff of just and humane treatment, the right to contact a consular representative, to be informed of the charges against her, the facilities necessary to her defense, and a prompt and a fair disposition of her case are shown by the record to have been afforded the Plaintiff in connection with her Iranian conviction in such manner that the Secretary had substantial evidence before him to determine and decide to recognize and give validity to the Iranian judgment of conviction as a bar to Plaintiff receiving the desired benefits. It further is apparent from said Treaty that the United States has recognized the Iranian Courts as Courts of competent jurisdiction over citizens of the United States who violate Iranian criminal laws and that the course of judicial procedure in Iran is according to the course of a civilized jurisprudence likely to secure an impartial administration of justice. It follows that the Secretary was also legally correct in according recognition to Plaintiff's Iranian judgment of conviction for the homicide of the insured individual.

The case of *Somportex Limited v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435 (3rd Cir. 1971) holds that judgments of foreign courts should be recognized in the United States under principles of comity and provides further that comity should be withheld only when its acceptance would be contrary or prejudicial to the interests of the nation (United States) called upon to give it effect. Under the principles of this case the record reveals substantial evidence to support the Secretary's determination and decision that the Iranian conviction of Plaintiff was accomplished in such manner and under such procedures that comity should not be withheld as being contrary or prejudicial to the interests of the United States. One interest of the United States here involved is that one should not recover benefits payable on the death of a party whose life he or she has feloniously taken. *New York Mutual Life Insurance Co. v. Armstrong,* 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997 (1886). Another interest of the United States is that homicide is here prohibited as in Iran. And by said Treaty the United States has not found the Iranian judicial procedure to be offensive.

◼ In any event and under any of the above cases or principles announced therein the Court finds and concludes that the Secretary did not misapply the law but followed the law and had substantial evidence in the record before him to support his determination and decision to give recognition and validity to Plaintiff's Iranian conviction as a bar under the regulation to her request for benefits. This includes Plaintiff's complaint that she was not afforded a speedy trial for the record contains substantial evidence that Plaintiff was in fact under the circumstances afforded a speedy trial in Iran.

◼ As to Plaintiff's second point, *supra,* the regulation involved requires a final conviction by a Court of competent jurisdiction of the felonious and intentional homicide of an insured individual. The conviction of Plaintiff is final and this is not disputed. Heretofore in this Order it has been shown that the record

reveals that the Iranian Court involved was a Court of competent jurisdiction over the Plaintiff and the crime of which she was convicted. Plaintiff was convicted of a felonious homicide and she does not contend otherwise. It is undisputed that the insured individual was her former husband and that she killed him. But Plaintiff asserts that she was not convicted of intentional homicide as that term is used in the regulation involved.

In Plaintiff's proposed findings of fact and conclusions of law to the Administrative Law Judge (Tr. 63) it is stated:

"The five Judge Court convicted claimant (Plaintiff) of willful homicide and sentenced her to ten years hard labor." (Underscoring added).

As hereafter shown a willful homicide is identical with an intentional homicide. So Plaintiff admits an intentional homicide.

It is clear from the record that Plaintiff was convicted under Article 170 or the Iranian Penal Code and this section covers willful or intentional homicide. The Iranian record of Plaintiff's hearing (Tr. 253–263) reveals at page 257 that Plaintiff,

". . . was indicted for the murder of her husband Melvin Cooley with a revolver . . . under Article 170 of the Penal Code . . ." (Underscoring added)

and at page 258,

". . . Mrs. Doris (Plaintiff) used the weapon to shoot at him and as given in the opinion of the coroner the man was murdered as a result of receiving three shots; the court has thus repudiated the defendant's denial and under Section 170 of the Code of Criminal Procedure and considering Section 44 or (sic) the same Act she was sentenced to ten years in jail at hard labor . . ." (Underscoring added) Article 170 provides:

"The penalty prescribed for an offender who commits willful homicide shall be death, except if otherwise provided by law." (Tr. 71)

Plaintiff's Iranian attorney reported (Tr. 291) that,

"I based my defence (sic) on the plea that the murder had been a non-voluntary murder."

Also,

"Secondly, I hoped that even if the court considered the case to be one of voluntary murder it should consider that it had been committed in self-defence (sic), for according to Iranian law, murder in self-defence (sic) is not punishable." (Tr. 291).

This attorney further reported,

"Unfortunately the First Bench of the Criminal Court which tried Mrs. Cooley, invalidated these points . . ." (Tr. 291),

and further,

"Nevertheless we were able to commute the death sentence to ten years imprisonment." (Tr. 291).

The record in evidence thus clearly shows Plaintiff was convicted of willful and voluntary murder under Article 170 of the Iranian Penal Code.

The Report of the Iranian hearing (Tr. 258–259) then reveals that Plaintiff's Iranian attorney sought reversal of her conviction by the First Bench on the grounds that the murder was not intentional and that instead of being convicted under Article 170 (for willful homicide) her crime fell under Article 171 as quasi-intentional homicide or Article 177 as unintentional homicide. The Second Bench of the Iranian Court denied this request for reversal and said,

". . . no reason exists to justify its reversal." (Tr. 259).

"Willfully" to act is defined in *Federal Jury Practice and Instructions*, Devitt & Blackmar, Vol. I, § 16.13 as follows:

"§ 16.13 'Willfully'—To Act

An act is done 'willfully' if done voluntarily and intentionally, and with

the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law."

Thus, the record contains substantial evidence that Plaintiff was convicted of the intentional homicide of the insured individual, her husband, by putting three shots in his body.

The Court finds and concludes that the Secretary did not misapply the law in this instance and that substantial evidence in the records shows as found by the Secretary (See Tr. 39 and 42) that Plaintiff was convicted of the voluntary and intentional homicide or murder of the insured individual. The Secretary made reference to Article or Section 171 of the Iranian Penal Code but Plaintiff was not convicted under this Article or Section. She was charged and convicted under Article 170 for willful (or voluntary and intentional) homicide. This is seen from the Report of the Iranian hearing and the Report of Plaintiff's attorney as abovementioned.

Plaintiff's Motion For New Trial is denied and again as shown in the Court's Memorandum Opinion of March 26, 1974 as supplemented by this Order the Secretary did not misapply the law in this case and there is substantial evidence in the record to support the finding and decision of the Secretary that Plaintiff was properly denied disability benefits under 42 U.S.C. § 402(g) by reason of her having been convicted by a Court of competent jurisdiction of the felonious and intentional homicide of the insured individual. The decision of the Secretary therefore should be affirmed and Plaintiff's action dismissed. Counsel for Defendant will prepare and submit an appropriate Judgment based on the Memorandum Opinion of March 26, 1974 as supplemented by this Order and present the same to the Court for signature and entry herein.