**Doris COOLEY, Appellant,**

**v.**

**Caspar W. WEINBERGER, Secretary of Health, Education & Welfare of the United States of America, Appellee.**

**No. 74–1740.**

United States Court of Appeals, Tenth Circuit.

June 18, 1975.

Rehearing Denied Aug. 14, 1975.

James B. Bratton, Gary W. Dugger, McAlester, Okl., and Bratton, Allford & Ashmore, McAlester, Okl., of counsel, for appellant.

Richard A. Pyle, U. S. Atty., and Betty R. Outhier, Asst. U. S. Atty., for appellee.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This case concerns a claim for mother's insurance benefits under the Social Security Act. 42 U.S.C. § 402(g). Doris Cooley, the claimant, filed an application for the benefits resulting from the death of her husband, Melvin K. Cooley, the wage earner. The application was denied and Doris Cooley's request for a hearing was later denied on the grounds that the request itself had not been timely filed. However, on appeal the Social Security Appeals Council remanded the matter to an administrative law judge for a full hearing.

The administrative law judge, after hearing, denied the claim on the ground that the claimant, Doris Cooley, had herself feloniously and intentionally killed her husband, Melvin Cooley, and accordingly was not entitled to benefits by virtue of 20 C.F.R. § 404.364 (1971). That regulation reads as follows:

"A person who has been finally convicted by a court of competent jurisdiction of the felonious and intentional homicide of an insured individual shall not be entitled to monthly benefits or to the lump-sum death payment based on the earnings of such deceased individual and such felon shall be considered nonexistent in determining the entitlement of other persons to monthly benefits or the lump-sum death payment based on the deceased individual's earnings."

Claimant requested review of the decision of the administrative law judge, and on such review the decision was upheld by the Appeals Council. Claimant then sought judicial review of this administrative action, and the trial court upheld the denial of the claim. Claimant now seeks our review of the matter.

The real root of the present controversy is the fact that the claimant killed her husband in Iran. Melvin Cooley obtained employment with an oil company having drilling operations in Iran. Mrs. Cooley soon followed her husband to Iran. In a marital dispute, the details of which will be briefly alluded to, Doris Cooley shot her husband three times with a gun. She was arrested by the Iranian authorities and charged with "willful homicide" under Article 170 of the Iran Penal Code. This section reads as follows:

"The penalty prescribed for an offender who commits *willful homicide* shall be death, except if otherwise provided by law." (Emphasis added.)

Article 171 of the Iran Penal Code is also involved and that article reads as follows:

"Whoever willfully, *but without intention to kill,* inflicts a wound or deals a blow to another person, causing the death of the victim, shall be punished by hard labor from three to ten years, provided that the instrument used shall ordinarily not be suitable for causing death.

"If the instrument used proves to be ordinarily suitable for causing death, the offender shall be deemed to have committed murder." (Emphasis added.)

Mrs. Cooley was convicted by a five-judge Iranian court of having committed "willful homicide" in violation of Article 170 of the Iran Penal Code, with the death sentence being commuted to ten years' imprisonment. On appeal, Mrs. Cooley's conviction was affirmed by an Iranian appellate tribunal. After she had been imprisoned for several years, she was released under a Royal Amnesty granted by the Shah which reduced her sentence to two years of solitary confinement.

On her return to the United States Doris Cooley then filed a claim for Social Security benefits. In the present appeal claimant raises two matters: (1) She was *not* convicted in Iran of the "felonious and intentional" homicide of her husband, as required by the regulation, and hence is not barred from Social Security benefits; and (2) if she was convicted of

such degree of homicide, the Iranian conviction not only violated procedural due process as known in the United States, but was so shocking in its violation of fundamental rights that it should not be recognized by administrative agencies or the courts of the United States.

As concerns the Iranian conviction, the administrative law judge had before him a translation of the Iran Penal Code, the opinion of the Iranian appellate court affirming Mrs. Cooley's conviction, and certain correspondence from Mrs. Cooley's court-appointed defense counsel. Further reference to these exhibits will be made later.

Mrs. Cooley was permitted to testify at length before the administrative law judge. She related all the details of her stormy marital life with Melvin Cooley. It was her position before the administrative law judge, as it was before the Iranian courts, that her husband was shot with his own gun as he assaulted her in a drunken rage. Mrs. Cooley testified that she and her husband fought over the gun and in so doing it discharged and killed him. Her defense at trial had been self-defense and accidental killing.

Mrs. Cooley was also permitted to testify as to the condition of the jail in which she was confined prior to trial, which trial occurred nearly a year after her arrest for the killing. She indicated that she was repeatedly questioned by the authorities, and that she was never given any *Miranda* warnings. She agreed that she had appointed counsel to represent her, but said they had a language difficulty. She also stated that she was subjected to continual torture and abuse, including the "water treatment," which consisted of letting a drop of water fall on her forehead as she lay on a shower floor. It was on this general state of the record that the administrative law judge found that Mrs. Cooley had been convicted of a "felonious and intentional" homicide in Iran and that such conviction should be recognized by the Secretary of Health, Education and Welfare. Our study of the record convinces us that there is substantial evidence to support the critical findings of the administrative law judge, which were adopted by the Appeals Council, and that the denial of Mrs. Cooley's claim must be upheld. Jones v. Finch, 416 F.2d 89 (10th Cir. 1969).

The applicable regulation bars a person from receiving Social Security benefits if the claimant has "feloniously and intentionally" killed the wage earner, and the conviction therefor has become final. One guilty of a lesser degree of homicide is not barred by the regulation from receiving benefits. Claimant contends that the record indicates that she was *not* convicted of the felonious and intentional homicide of her husband under Article 170 of the Iran Penal Code, but that she was actually convicted under Article 171 of the code. This latter article covers a willful act where there is no intention to kill. Hence, argues the claimant, she was not convicted of a felonious and *intentional* homicide as required by the regulation.

Article 170 provides that the penalty for one who commits "willful homicide" shall be death, unless otherwise provided by law. Article 171 provides that one who willfully inflicts a wound or deals a blow to another person and causes his death, but without an intention to kill, shall not be given the death penalty, but shall be imprisoned from three to ten years, *IF* the death dealing instrument is not one ordinarily suitable for causing death. The same article goes on to provide that if the instrument used is one ordinarily suitable for causing death, then the offender shall be deemed guilty of murder, and punished by death as provided in Article 170.

It is thus at once apparent that the present case does not fit into the mold of a willful act without an intent to kill, as is provided in the first portion of Article 171, for the simple reason that the instrument which caused the death of Mr. Cooley was a gun, an instrument "ordinarily suitable" for causing death.

The record of the conviction of Mrs. Cooley in the Iranian trial court was not

before the administrative law judge. However, a translation of the opinion of the Iranian appellate tribunal affirming Mrs. Cooley's conviction is a part of the present record, and that opinion clearly indicates that Mrs. Cooley was indicted and prosecuted under Article 170 of the Iran Penal Code. Although the penalty for willful murder under Article 170 is death, the ten-year term of imprisonment imposed on Mrs. Cooley is explained by the letter in the record from her court-appointed counsel, wherein counsel stated that he had succeeded in getting the death sentence commuted to ten years' imprisonment.

■ In sum, then, our study of the record convinces us that Mrs. Cooley was convicted of "willful murder" under Article 170. This is so notwithstanding the fact that the administrative law judge at one point in his decision indicated, inadvertently or otherwise, that Mrs. Cooley was convicted under Article 171. This misstatement was later corrected by the judge in his decision when he recognized that Mrs. Cooley was indicted under Article 170. Any doubt on this point was cleared up by the judge in his formal findings when he found that Mrs. Cooley had been finally convicted of the felonious and intentional homicide of her husband in a court of competent jurisdiction in Abadan, Iran. If we had doubt about the degree of homicide of which Mrs. Cooley has now been convicted, we would remand the matter for further hearing. But the record before us in our view clearly indicates a conviction under the provisions of Article 170. And a conviction of "willful homicide" under Article 170 is the equivalent of a "felonious and intentional homicide" as that phrase is used in the agency regulation. F. X. Messina Construction Corp. v. Occupational Safety and Health Review Commission, 505 F.2d 701 (1st Cir. 1974); United States v. Fidanian, 465 F.2d 755 (5th Cir. 1972); and Nabob Oil Co. v. United States, 190 F.2d 478 (10th Cir. 1951).

Perhaps the principal matter raised by the claimant in this appeal is whether the Iranian conviction should be recognized in the United States. In this regard claimant argues that her conviction was obtained by methods which not only did not comport with due process, but were so shocking in nature that the conviction should not be recognized by administrative agencies or courts in the United States.

It should be noted at the outset that the administrative judge did not accept the Iranian conviction at face value, but did inquire into the facts and circumstances giving rise to the conviction. As previously indicated, Mrs. Cooley testified at great length, not only as to the homicide itself, but also concerning events leading up to the trial of the matter. In this general connection the administrative law judge summarized as follows:

"The claimant presents a myriad of contentions that her rights under the United States Constitution were violated. The violation of the 'due process' clause of the United States Constitution seems to be the principal contention relied upon by the claimant for relief. In this connection the claimant contends: (1) she was not allowed to consult with her attorney; (2) that she was not advised of her rights; (3) that she was denied the right to post bail; (4) that an indictment was not issued in her case; (5) that she did not have the right to cross-examine witnesses; and (6) that the prosecution did not prove her guilty beyond a reasonable doubt. The evidence establishes that claimant had the right to be represented by an attorney; that she chose Dr. E. Paad, Attorney-at-Law, Tehran, Iran to represent her; that her legal rights were explained to her by her attorney; that he represented her at her trial; that the witnesses against her were cross-examined by the Judges and she was filed on pursuant to Article 170 of the Iranian Penal Code, and thereafter arraigned and held for trial pursuant thereto. In addition, an interpreter was appointed for her benefit during the trial. This

evidence overturns the contentions of claimant and reveals a criminal process in Iran similar to that in the United States. * * *.

"It is not the duty or place of the Administrative Law Judge to become the judge and jury in a foreign land and re-try the criminal case based on facts from one side only for purposes of Social Security benefits; however, if the facts revealed that the procedural steps followed in the foreign legal system were bizarre, arbitrary, or capricious, and lacking in continuity, then the case might be different, but these are not the facts in this case. The fact that customs and mores of Iran are different from those in the United States should not act to overturn a decision of that sovereignty for Social Security purposes when the evidence reflects a legitimate legal process, although procedurally and substantially different from the United States federal system."

Brennan v. University of Kansas, 451 F.2d 1287 (10th Cir. 1971), sheds light on the question as to whether the Iranian conviction should be recognized by us. In *Brennan,* a search and seizure made in Italy according to Italian procedures was thereafter involved in a subsequent civil action brought in the United States by the one whose premises had been thus searched. In the proceeding brought in the United States it was contended that the search and seizure conducted in Italy violated Fourth and Fourteenth Amendment rights under the United States Constitution and accordingly should not be recognized by United States courts. In rejecting this argument, we commented at page 1289 as follows:

"   *   *   *   It is a firmly established principle of American jurisprudence that the laws of one state have no extra-territorial effect in another state.   The forum state will give effect to foreign law as long as the foreign law is not repugnant to the moral sense of the community.   The mere fact that the law of the foreign state differs from the law of the state in which recognition is sought is not enough to make the foreign law inapplicable.   No attempt was made to show that the search was conducted in any manner but a lawful one in accord with the applicable Italian law.   This Court cannot hold that the procedure followed in executing this search is so shocking to the forum community that it cannot be countenanced.   Indeed, this Court is reminded of the oft-paraphrased advice of St. Ambrose, Catholic bishop of Milan in the fourth century, to St. Augustine.  'When you are at Rome, live in the Roman style; when you are elsewhere, live as they do elsewhere.'"

■ In the instant case, after listening to Mrs. Cooley's version of events, and after consideration of the opinion of the Iranian appellate tribunal, the statements made by Mrs. Cooley's Iranian lawyer, and other documentary evidence before him, the administrative law judge found, in effect, that the procedure followed in Iran was not "so shocking to the forum community that it cannot be countenanced."   We think there is substantial evidence to support this finding and we are not inclined to disturb it. Gardner v. Bishop, 362 F.2d 917 (10th Cir. 1966). The fact that Iranian procedures may not be consistent with due process protections guaranteed in United States criminal proceedings will not in itself prevent effect being given a judgment rendered in Iran in accord with Iranian law. *See* United States v. Mundt, 508 F.2d 904 (10th Cir. 1974), and Holmes v. Laird, 148 U.S.App.D.C. 187, 459 F.2d 1211 (1972).

■ We recognize that Mrs. Cooley's testimony before the administrative law judge constitutes a rather severe indictment of the Iranian legal system, and her position in the present proceeding may perhaps be a sympathetic one. However, the administrative law judge is the one who heard her testimony and he apparently did not accept what she said at face value.   And it is the task of the administrative law judge, and not this court, to determine her credibility.

In Travis v. Richardson, 434 F.2d 225 (10th Cir. 1970), we observed that "evaluation of the testimony and the findings of fact are for the administrative agency to make, based upon the entire evidence before it."

Judgment affirmed.