S.H. BRAATEN, et al., Respondents,

v.

Roy I. JARVI, et al., Appellants.

No. C2–83–1732.

Court of Appeals of Minnesota.

April 4, 1984.

Review Denied July 27, 1984.

George Gaffaney, Alexandria, for appellants.

Scott T. Johnston, Alexandria, for respondents.

Considered and decided by FOLEY, P.J., and WOZNIAK and SEDGWICK, JJ., without oral argument.

## OPINION

SEDGWICK, Judge.

Appellants appeal from the trial court judgment that an agreement signed by the

developers of Victoria Heights Sub-Division, dated August 17, 1949, had granted respondents an easement appurtenant to appellants' lakeshore lot (Lot 43) and that the restrictions contained in the agreement were enforceable against appellants. The 89 respondents in this suit cross-appeal from the trial court judgment that appellants need not remove their storage building from Lot 43.

We affirm in part, reverse in part and remand.

## FACTS

On August 17, 1949 an agreement was executed by the owners of land known as the Victoria Heights Sub-Division in Alexandria, Minnesota. The agreement provides that all owners of property in Victoria Heights are entitled to use Lot 43 (the lot) as a bathing beach, for launching and landing boats, for boat houses, a pavilion and docks. Since the execution of the agreement, respondents and their predecessors in title have continuously used the lot for such activities and for a variety of other summer and winter recreational sports.

The agreement also provides:

The Covenants hereinafter set forth are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1973, at which time said Covenants shall be automatically extended for successive periods of 10 years unless by vote of a majority of the then owners of the lots it is agreed to change said Covenants in whole or in part.

The owners have not voted to rescind the covenants.

On September 4, 1975, appellants took title to Lot 43, purchasing it together with an adjacent lot from Fred Foslien, an original developer of Victoria Heights. Appellants paid only $1 for Lot 43. Foslien informed appellants of the restrictions on Lot 43. The warranty deed also indicated the lot is "subject to restrictions of record."

In 1977, appellants constructed a steel pole building to be used for storage and as a boat house. Only a small portion of the equipment stored inside is boat equipment. No boats are stored in this building. The agreement states that only boat houses or a pavilion may be constructed on the lot.

After 1977, appellants placed various obstructions on the lot in an apparent attempt to restrict the use of the lot by respondents. During June of 1982, appellants placed approximately 36 yards of fill in the natural depression of the lot where respondents had backed their vehicles and trailers to the lake to launch their boats. The fill was approximately 3 feet deep and made it nearly impossible for the respondents to launch and land boats.

Appellant Roy Jarvi testified that he intended to move the boat launch site to the other side of the lot by a sewer drainage easement. Recognizing that this was an area with a steep incline and not suitable for launching boats without grading, Jarvi indicated that he planned to have the area graded.

Following trial on April 27, 1983, the trial court concluded that the rights created by the agreement constitute an easement appurtenant which is unaffected by Minn. Stat. § 500.20, subd. 2 (1980, repealed 1982). The trial court permanently enjoined and restrained appellants-defendants from (1) taking any actions which might in any way hamper or restrict the plaintiffs from exercising their easement rights relative to Lot 43, and (2) using their storage building for purposes other than a boat house. The trial court also ordered defendants to remove the fill from the boat launch site or provide another suitable area for launching boats. The trial court maintained jurisdiction to insure that defendants would provide a suitable boat launching and landing area.

## ISSUES

1. Does the August 17, 1949 agreement grant owners of lots in Victoria Heights Sub-Division an easement appurtenant to Lot 43?

2. Does Minn.Stat. § 500.20, subd. 2 (1980, repealed 1982 c. 500 s. 5) render the agreement null and void?

3. Did the trial court err in failing to order appellants to remove their storage building from Lot 43?

## ANALYSIS

1. The trial court found that at the time Victoria Heights Sub-Division was platted, "the original developers entered into an Agreement dated August 17, 1949, which created certain rights and responsibilities relative to the use of properties located in Victoria Heights Subdivision." The trial court further found:

That the Agreement of August 17, 1949, granted to all owners of properties within the platted area the right to use Lot 43, Victoria Heights Subdivision, as a private bathing beach and for boat houses, docks, a pavilion, and for the launching and landing of boats. The Agreement further provided that these rights of use were to "run with the land" and that the Agreement could be changed only by vote of a majority of the then owners of the lots in the platted area.

Based on these and other findings, the trial court concluded:

That the rights created by the Agreement of August 17, 1949, constitute an easement appurtenant which is unaffected by the provisions of M[inn].S[tat]. Section 500.20 and which continues to operate to the benefit of Plaintiffs, their successors and assigns.

■ An easement is defined as "an interest in land in the possession of another which entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists." *Minneapolis Athletic Club v. Cohler*, 287 Minn. 254, 258, 177 N.W.2d 786 (1970) (citing Restatement, Property, § 450).

■ An easement can only be acquired by grant, express or implied, or by prescription. 6A Dunnell Minn. Digest, 2d, *Easements* § 2.00 (3d ed. 1983). *See e.g. City of Hutchinson v. Wegner*, 157 Minn.

41, 195 N.W. 535 (1920); *Highway 7 Embers, Inc. v. Northwestern National Bank*, 256 N.W.2d 271 (Minn.1977); *Burns v. Plachecki*, 301 Minn. 445, 223 N.W.2d 133 (1974).

In describing an easement all that is required is that the land which is subject to the easement be identified and the intention of the parties expressed.

*Miller v. Snedeker*, 257 Minn. 204, 215, 101 N.W.2d 213, 222 (1960). The scope of an easement created by express grant "depends entirely upon the construction of the terms of the grant." *Highway 7 Embers, Inc.*, 256 N.W.2d at 275.

■ Here, the court found that the 1949 agreement created an easement appurtenant benefitting the residential lot owners of Victoria Heights Sub-Division. Although the agreement did not specifically state that an "easement" was being granted, it indicated that residential lot owners in the subdivision were entitled to make certain use of Lot 43 and the land affected was specifically referred to by its legal description. The trial court therefore properly concluded that an easement was granted and properly restrained appellants, their successors and assigns, from taking any actions which might in any way hamper or restrict the respondents from exercising their easement rights relative to Lot 43.

2. Appellants argue that whether or not an easement was created by the agreement, its covenants (including the easement) and restrictions terminated in 1979 by virtue of application of Minn.Stat. § 500.20, subd. 2 (1980, repealed 1982 c. 500 s. 5).

Minn.Stat. § 500.20, subd. 2 (1980), enacted in 1937 and repealed in 1982 states:

500.20 **Defeasible estates**

**Subdivision 2. Restriction of duration of condition.** All covenants, conditions, or restrictions hereafter created by any other means, by which the title or use of real property is affected, shall cease to be valid and operative 30 years after the date of the deed, or other instrument, or the date of the probate of the will, creat-

ing them; and after such period of time they may be wholly disregarded.

The trial court enforced the restrictions in the agreement by permanently enjoining and restraining defendants-appellants, their successors and assigns, from using Lot 43 contrary to the agreement. We agree with the trial court.

The Senate Judiciary Committee hearings indicate that repeal of Minn.Stat. § 500.20, subd. 2 (1980), was proposed partly because of concern that the statute might decrease the value of shopping centers which obtain part of their value from lease restrictions. *See Minn. Senate Judiciary Comm. Hearings*, Feb. 22, 1982, (statement of Senator Jack Davies), (hereafter Hearings). A representative of the Real Estate Section of the Minnesota State Bar Association also expressed concern that residential communities such as town houses, associations, and other planned housing developments might be harmed by the statute because various protective covenants are a "very, very essential part of the community." *Hearings* (statement of Richard Gabriel). Mr. Gabriel noted: "If these types of restrictions are allowed to fall the community would be very seriously hurt." *Id.*

The developers of Victoria Heights recognized that a lake access lot would increase the value of the homes and lots they sold in the subdivision. Various plaintiffs testified that they paid a premium to purchase a lot in Victoria Heights because of the lake access lot. The availability of this lake access continues to favorably affect the sales and value of homes in the subdivision.

Fred J. Foslien, the original owner of Lot 43, and the other developers who drafted the agreement were knowledgeable and informed parties. These developers included the following provision in the agreement to avoid the potential termination of the covenants and restrictions by the application of Minn.Stat. § 500.20, subd. 2 (1980, repealed 1982 c. 500 s. 5):

The Covenants hereinafter set forth are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1973, at which time said Covenants shall be automatically extended for successive periods of 10 years unless by vote of a majority of the then owners of the lots it is agreed to change said Covenants in whole or in part.

■ By this provision, the covenants were binding on all parties for approximately 23 years, until January 1, 1973, when the covenants would automatically be extended for successive 10-year periods unless the owners of the lots in the subdivision voted to change the agreement. Because the lot owners failed to vote to change the agreement by January 1, 1973, the agreement was automatically renewed for a 10-year period. This 10-year period had not expired when Minn.Stat. § 500.20, subd. 2 (1980) was repealed in 1982.

Appellants did not blindly enter into the transaction involving the purchase of Lot 43. Appellant Roy Jarvi, owner of the lot, testified that he purchased it from Fred Foslien for $1 at the time he purchased adjacent Lot 42B for construction of a home. Jarvi knew at the time of purchase that the lot had been designated as a bathing beach and for launching and landing boats. Jarvi testified that when he negotiated the purchase of Lot 42B, he was encouraged by Mr. Foslien to also purchase Lot 43 because Foslien "was sick and tired of cleaning up around there."

The added value the agreement gives to the homes of the 89 respondents' in this action is clear. The limited value of Lot 43 to its owner, who paid a mere $1 for it, is also obvious. Recognizing these respective benefits and burdens, the developers of Victoria Heights Sub-Division carefully drafted the agreement so that these benefits and burdens could remain enforceable indefinitely.

Appellants are not prevented from making any use of Lot 43 which does not interfere with respondents' easement rights and which does not violate the restrictive covenants contained in the agreement. *See*

*Minneapolis Athletic Club v. Cohler*, 287 Minn. 254, 258, 177 N.W.2d 786, 789–90 (1970).

3. Respondents argue that because section A of the agreement restricts construction on the lot to boat houses, docks and a pavilion, the trial court erred in failing to order appellants to remove their storage building from Lot 43.

 Appellants constructed a pole storage building on the lot in 1977. The ten foot tall steel-sided building is approximately 24 feet wide and 36 feet long, has two overhead garage doors and one entry door. All of the doors face the road—not the lake. Appellants' use of the building for six years as a warehouse for an automobile, lumber, antiques, farm machinery and parts, and mattresses along with outboard motors, oars and life jackets, supports the trial court finding that: "This building has not been used primarily as a boat house, but rather it has been used primarily for storage."

We agree with respondents that the intent of the agreement is that only a boat house be constructed on the lot.

A contract is to be interpreted to give effect to the mutual intention of the parties at the time of contracting, and in so doing the language used governs if it is clear and does not involve an absurdity.

*Carl Bolander & Sons Co., Inc. v. United Stockyards Corp.*, 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974). The agreement clearly indicates that boat houses, not storage buildings, may be constructed on the lot. The size of appellant's building, direction it faces and its use demonstrate that the building was neither intended nor used as a boat house and is in violation of the agreement.

## DECISION

The August 17, 1949 agreement created an easement appurtenant on behalf of respondents and restrictions enforceable against appellants which prevent them from interfering with respondents' use of the lot for swimming and boating, and from constructing buildings on the lot in violation of the agreement. Minn.Stat. § 500.20, subd. 2 (1980, repealed 1982), does not void the agreement because it provides for automatic renewal prior to the expiration of the 30-year term prescribed by the statute.

We affirm the trial court's permanent injunction enjoining and restraining appellants, their successors and assigns, (a) from taking any actions which might in any way hamper or restrict the respondents from exercising their easement rights relative to Lot 43, and (b) from using the lot contrary to the agreement of August 17, 1949.

Affirmed in part, reversed and remanded to the trial court with instructions to enter an order directing appellants to remove the storage building from Lot 43.