**Orrin M. HAUGEN, et al., Appellants,**

**Richard M. Smith, Plaintiff,**

v.

**Muriel V. PETERSON, Respondent.**

**No. C8–85–2212.**

Court of Appeals of Minnesota.

July 1, 1986.

Review Denied Aug. 20, 1986.

Review Granted Sept. 25, 1986.

Steven D. Jamar, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Orrin M. Haugen, et al.

Henry H. Feikema, Smith, Juster, Feikema, Malmon, & Haskvitz, H. Gordon Taylor, Minneapolis, for Richard M. Smith.

Mark D. Nyvold, Mark W. Peterson, Minneapolis, for Muriel V. Peterson.

Heard, considered and decided by LESLIE, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

FOLEY, Judge.

Orrin M. Haugen and Marilyn D. Haugen appeal from the trial court's summary judgment for Muriel V. Peterson arguing that (1) the trial court erred in ruling that the restrictive covenants of the Indian Hills Subdivision in Edina were no longer enforceable, and (2) the trial court erred in awarding respondent attorney's fees since appellants did not assert an unfounded position solely to delay the proceedings or harass respondent. We reverse with directions.

## FACTS

In 1947 respondent Muriel Peterson and her husband (now deceased) purchased a lot in Edina. In 1949, they elected to quit claim their property to and from the developers of Indian Hills Subdivision, making their property subject to the Indian Hills Protective Covenants. These restrictive covenants state, in part:

Indian Hills

Protective Covenants

This conveyance is made subject to such of the following covenants, reservations and restrictions hereinafter referred to as Protective Covenants, as may by their terms be applicable to said premises, *which Protective Covenants shall run with the land* and be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors and assigns, *until December 31st, 1988, at which time said Protective Covenants shall be automatically extended for successive periods of ten years, unless by a vote of the majority of the then owners of the lots comprising said Indian Hills,* hereinafter referred to as Subdivision, *it is agreed by appropriate action to change, in whole or in part, said Protective Covenants* which are as follows:

\* \* \* \* \* \*

7. *The number of dwellings erected in any block of said subdivision may never exceed the number of lots originally platted.* Original lot lines may be adjusted by minor purchases and sales between adjoining owners provided that \* \* \* no lot shall be reduced to any lesser width than is required by the provisions of these Protective Covenants for any existing construction on said lot. Lots may be increased in size by combining lots or parts of lots in a manner to permanently reduce the number of lots in any block. Such revised lots shall be known as combined lots and for the purposes of these Protective Covenants shall be considered as a single lot, the same as

if said combined lot had originally been platted as a single lot.

\* \* \* \* \* \*

12. If any party shall violate or attempt to violate any of these Protective Covenants during the life thereof it shall be lawful for any party of interest in any plot, parcel, or lot in said subdivision to institute and prosecute proceedings at law or in equity against such party, either to prevent the said violation, or to recover damages.

\* \* \* \* \* \*

14. The foregoing Protective Covenants are created to establish a desirable and uniform plan for the development and protection of the said subdivision, and are for the benefit of said subdivision and of the owners of all the lots therein, and shall continue as covenants running with the land in favor of all grantees of the premises in said subdivision. (Emphasis supplied.)

In 1983, the Petersons decided to subdivide their property to build a smaller house on part of the property and sell their existing home to their son, Mark Peterson (respondent's attorney in this matter). After the elder Mr. Peterson died, Mrs. Peterson brought her request to the City Council.

The city planning staff recommended denial of the subdivision. However, the city planning commission voted to approve the subdivision after considering the favorable testimony of Peterson, her sons and various neighbors. Some neighbors had also voiced their concerns or disapproval of the project. For example, a neighbor across the street from Peterson, plaintiff Richard Smith, expressed concern over possible obstruction of his view of Lake Arrowhead, located behind Peterson's home, and whether the various setback requirements could be met. Peterson had no building plans but stated that she would not spoil his view and "we could work it out." Appellant Orrin Haugen did not object to the subdivision. The city council subsequently followed the planning commission's recommendation and approved the subdivision in

September 1983. The parties do not directly challenge these proceedings.

In September 1984, Peterson's neighbors to the west, the Haugens, and her neighbors across the street, the Smiths, commenced this lawsuit seeking and obtaining a temporary restraining order to prohibit construction of the new home. These neighbors assert they had learned that construction was imminent and that Peterson was going to build a house of a different type and in a different location from what they "had approved." Their affidavits indicate they were told the home would be built in the southeast corner of the lot (see map), which would be adjacent to the lake's inlet—not adjacent to Haugen's property line to the west, and the "small house" had grown into a two-story, 3,000 square foot house.

The Haugens and Smiths sought permanent injunctive relief against the proposed construction because they believed that the proposed construction violated the Indian Hills Protective Covenants and would deny Haugens' lateral support. In addition, they claimed that the subdivision was granted based on misrepresentations of material fact since the house was larger and would be located in a different part of the lot from what the neighbors had "approved."

Although a temporary restraining order was issued in 1984, the order was dissolved in October 1984 after Peterson indicated construction was not imminent because she had engaged an architect to prepare new plans. The trial court also found that the Indian Hills Protective Covenants had been automatically repealed by operation of Minn.Stat. § 500.20, subd. 2 (1980, repealed 1982 Minn.Laws ch. 500 § 5).

In the summer of 1985, Peterson moved for summary judgment on the complaint or for a default judgment. The trial court granted Peterson summary judgment, dismissed the counterclaims, and ordered plaintiffs to pay $1,000 in attorney's fees for asserting an unfounded position solely to delay the ordinary course of proceedings or to harass. Plaintiffs' motion for amend-

ed findings was denied. The Haugens alone appeal from the judgment.

## ISSUES

1. Are the Indian Hills Protective Covenants enforceable?

2. Did the trial court err in awarding fees under Minn.Stat. § 549.21 to respondent?

## ANALYSIS

### 1. *Restrictive Covenants*

The trial court granted respondent a summary judgment because it found that the Indian Hills Protective Covenants were not enforceable. The court found that the covenants expired on January 4, 1979, 30 years after their effective date, by operation of Minn.Stat. § 500.20, subd. 2 (1980, repealed 1982 Minn.Laws ch. 500 § 5) [1] and did not renew for a subsequent 10–year period as the covenants in *Braaten v. Jarvi,* 347 N.W.2d 279 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. July 27, 1984). Therefore, the court held that the covenants could not preclude Peterson's construction of a second house on Lot 3, Block 1 of the Indian Hills Subdivision.

We disagree with the trial court's analysis, particularly because we think the policy reasons which caused the legislature to repeal Minn.Stat. § 500.20, subd. 2 in 1982 require us to construe the repealed statute very narrowly and hold that the Indian Hills protective, or restrictive, covenants continue to be enforceable.

The legislature repealed this section to protect both shopping center lease restrictions and the restrictive covenants used in planned housing developments. *See Braaten,* 347 N.W.2d at 283. These deed restrictions were viewed as protecting a "very, very essential part of the community." *Id.* (quoting Richard Gabriel, Real Estate Section of the Minnesota State Bar Association, *Minn. Senate Judiciary Comm. Hearings,* Feb. 22, 1982).

The legislature's policy reasons for repealing Minn.Stat. § 500.20, subd. 2, noted in *Braaten,* seem to directly apply here—to protect homeowners in planned subdivisions from development that might decrease their property value. Here, the Petersons purchased their lot before the Indian Hills Corporation developed the subdivision. However, for some reason, possibly the belief that their home would derive some value from being part of a planned development, the Petersons elected to use a process of quit claim deeds to and from the Indian Hills Corporation so that their home and land would be part of the subdivision controlled by the protective covenants of Indian Hills. The covenants were drafted to preserve the character of the land until a "majority of owners in the subdivision" chose not to renew the covenants. As the legislature has determined—this protection should continue to benefit all whose homes derive value from protective covenants.

Appellants also urge us to note that the repeal of Minn.Stat. § 500.20, subd. 2 makes it unenforceable as a defense to their action just as the repeal of various usury laws made usury an invalid defense against a contract written before amendment of the usury laws. *See, e.g., United Realty Trust v. Property Development and Research Co.,* 269 N.W.2d 737, 742 (Minn.1978) ("The Supreme Court held that usury laws are penal in nature and that the repeal of such laws without a saving clause operates retrospectively, cutting off the defense of usury in all future actions, even upon contracts previously entered. Giving such effect to the repeal of usury laws denies no party a vested right.")

The record shows that no action challenged the restrictive covenants before Minn.Stat. § 500.20, subd. 2 was repealed.

---

1. Minn.Stat. § 500.20, subd. 2 (1980) provides:
    Subd. 2. **Restriction of duration of condition.** All covenants, conditions, or restrictions hereafter created by any other means, by which the title or use of real property is affected, shall cease to be valid and operative 30 years after the date of the deed, or other instrument, or the date of the probate of the will, creating them; and after such period of time they may be wholly disregarded.

We agree with appellants that under these facts it makes no sense to find that the restrictive covenants of Indian Hills, from which the homes therein derive some of their value, are not enforceable now—four years after our legislature has repealed this statute. Further, we interpret repealed subdivision 2 as a law aimed at preventing the continuation of a defeasible estate into perpetuity, past its purpose. This statute has only been used to repeal property restrictions that are unique to one deed, not whole subdivisions or planned developments. *See Matter of Turners Crossroad Development,* 277 N.W.2d 364, 373 (Minn.1979); *Housing and Redevelopment Authority of the City of South St. Paul v. United Stockyards Corp.,* 309 Minn. 331, 244 N.W.2d 275 (1976).

2. *Attorney's Fees*

The trial court abused its discretion in awarding respondent various costs and fees under Minn.Stat. § 549.21 (1984). The trial court found that "there *is* some indication that Plaintiffs have asserted an un-founded position solely to delay the ordinary course of the proceedings or to harass." However, Minn.Stat. § 549.21 allows no such award of costs and fees against a party who advances "a claim or defense unwarranted under existing law, if it is supported by a good faith argument for extension * * * of the existing law." *Id.* Obviously, appellants asserted such an argument since we agree with them and are reversing the trial court.

## DECISION

The trial court erred in granting respondent summary judgment since the restrictive covenants of the Indian Hill Subdivision are enforceable against respondent. The trial court abused its discretion in granting respondent $1,000 in costs and fees as provided for in Minn.Stat. § 549.21. We reverse with directions to enter judgment in favor of the Haugens enforcing the restrictive covenants.

Reversed with directions.

P = Peterson lot
H = Haugen lot
S = Smith lot

INDIAN HILLS SUBDIVISION, EDINA