Orrin M. HAUGEN, et al., Respondents,

Richard M. Smith, Plaintiff,

v.

Muriel V. PETERSON,
Petitioner, Appellant.

No. C8–85–2212.

Supreme Court of Minnesota.

Feb. 13, 1987.

---

Mark D. Nyvold and Mark W. Peterson, Minneapolis, for appellant.

Steven D. Jamar, Henry H. Feikema, H. Gordon Taylor, Minneapolis, for respondents.

John R. Carroll, Best & Flanagan, Minneapolis, Richard Edblom, Hennepin Co. Examiner of Titles, Minneapolis, Thomas S. Erickson, Dorsey & Whitney, Minneapolis, Charles L. Horn, Faegre & Benson, Minneapolis, and James C. Uecker, Title Ins. Co. of Mn., Minneapolis, for amicus curiae.

YETKA, Justice.

This case comes before us on appeal from the court of appeals which enforced restrictive covenants on land owned by appellant, preventing her from constructing a new home on a lot created by subdividing her original lot. The court of appeals reversed the District Court of Hennepin County, which had held the restrictive covenants void by reason of Minn.Stat. § 500.-20, subd. 2 (1980) (repealed 1982).[1] We reverse the court of appeals and reinstate the decision of the district court.

In 1947, Muriel V. Peterson and her husband purchased a lot in an area which became the Indian Hills subdivision of Edina, Minnesota. The lot became subject to certain restrictive covenants on January 4, 1949, when the Indian Hills Corporation deeded property back to the Petersons after they had previously quit-claimed their interest to the corporation.

The covenants do not prohibit subdivision of individual lots; they do provide that "[t]he number of dwellings erected in any block of said subdivision may never exceed the number of lots originally platted." The covenants were written to extend themselves automatically for 10–year periods after 1988.

In 1983, Mr. and Mrs. Peterson decided to subdivide their lot and build a house on the new subdivision. Though Mr. Peterson died in July 1983, Mrs. Peterson continued her plans to subdivide. On August 31, 1983, the plans for subdivision were presented to the Edina Community Development and Planning Commission, which recommended approval. The proposed subdivision was then approved by the Edina City Council on September 19, 1983.

After the subdivision was approved, Mrs. Peterson sold her home to her son, Mark Peterson. On August 17, 1984, before significant progress had been made in building the new home, Mrs. Peterson's neighbors, Orrin and Marilyn Haugen and Richard Smith, filed a lawsuit seeking to enjoin construction, citing the restrictive covenant. On the same date, the neighbors obtained a temporary restraining order preventing construction on Mrs. Peterson's lot. On October 17, 1984, the restraining order was dissolved by the district court. In August 1985, Mrs. Peterson was granted summary judgment by the Hennepin County District Court. The Haugens, but not Mr. Smith, appealed this decision to the

---

1. Act of Apr. 26, 1937, ch. 487, § 1, 1937 Minn. Laws 851, 852 *repealed by* Act of Mar. 19, 1982, ch. 500, § 5, 1982 Minn.Laws 567, 568.

court of appeals. The court of appeals reversed the trial court's decision, directing that the covenants be enforced. 390 N.W.2d 795.

The issues raised here on appeal are:

I. Did the repeal of Minn.Stat. § 500.20, subd. 2 (1980) revive the effect of a restrictive covenant?

II. Did the covenant's automatic extensions extend the effect of the restrictive covenants?

III. Is either party estopped from pressing their claims?

Minn.Stat. § 500.20, subd. 2 (1980) states that: "All covenants, conditions, or restrictions hereafter created * * *, by which the title or use of real property is affected, shall cease to be valid and operative 30 years after the date of the deed, or other instrument * * *; and after such period of time they may be wholly disregarded."

The central issue presented by this case is whether the repeal of Minn.Stat. § 500.-20, subd. 2 in 1982 revived a restrictive covenant which, under the statute, terminated in 1979. Minn.Stat. § 645.21 (1986) states that: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." In this case, the 1982 repeal contains no language requiring retroactive effect. However, this court does make exceptions to the presumption against retroactivity. An example is statutes that repeal a penal law. The leading case is *United Realty Trust v. Property Development & Research Co.*, 269 N.W.2d 737 (Minn.1978). In that case, the court held that a borrower was obligated to obey the terms of a loan whose interest rates were illegally high when made in 1973, but acceptable under a partial repeal of the usury laws in 1974. The court noted the general rule that "repeal of a penal law releases the penalty imposed as to all actions initiated after repeal * * *." *Id.* at 742, citing the case of *Ewell v. Daggs*, 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682 (1883). Specifically, the Court held that the legislature had the power to validate retroactively a contract previously invalid so long as it did not interfere with a

vested right. *United Realty Trust*, 269 N.W.2d at 743.

However, *United Realty Trust* only supports reviving the restrictive covenant if the 30–year limit on the life of property restrictions is a "penal law." A "penal law" is generally defined as being a law "the purpose of which is to punish an offense against public justice of the state rather than to afford a private remedy to a person injured by a wrongful act." *Cooley v. Weinberger*, 398 F.Supp. 479, 482–83 (E.D.Okla.1974), *aff'd*, 518 F.2d 1151 (10th Cir.1975). It would seem the legislature's limitation on covenants is directed against a perceived social evil—indefinite restrictions on the private use of land. However, it strains the meaning of the word "penalty" to associate it with the 30–year limit. A penalty can mean any action involving hurtful or disadvantageous consequences, but, in its more restricted sense, refers to some deprivation of right or property. *See In re Levy Motor Vehicle Operator's License Case*, 194 Pa.Super. 390, 169 A.2d 596 (1961). In this case, the termination of the covenant in 1979 was not an abrupt deprivation to the neighbors who benefited by its terms, for the 30–year limitation was an implicit part of the covenant when it was made. The neighbors never had a right to an indefinite covenant of which they could be deprived.

In addition, *United Realty Trust* restricted retroactive application of a repeal to occasions where it would not interfere with a party's vested right. *Id.*, 269 N.W.2d at 743. *See also* Minn.Stat. § 645.-35 (1986) ("The repeal of any law shall not affect any right accrued * * * under or by virtue of the law repealed."). Appellant argues, and we agree, that the termination of the restrictive covenant in 1979 left her with a vested right to develop her property as she saw fit.

A definition of what constitutes a "vested right" is contained in *Ridgewood Development Co. v. State*, 294 N.W.2d 288, 294 (Minn.1980). In *Ridgewood*, a developer who had begun arranging the financing of residential construction in reliance on tax

benefits granted by certain statutes sued to retain the advantage of those tax benefits when the state suddenly repealed the applicable statute. The developer argued that he had a vested right to the benefits. The court stated that "a right becomes vested when it has 'arisen upon a contract, or transaction in the nature of a contract, * * * and liabilities under that right have been so far determined that nothing remains to be done by the party asserting it * * *.' " *Id.* at 294 (citation omitted). If the restrictive covenant here can be likened to a contract, then Mrs. Peterson's right to build a new home arose in 1979 when the covenant expired. At that point, there remained nothing for appellant to do to assert her rights.

Respondents cite two rezoning cases, *Kiges v. City of St. Paul*, 240 Minn. 522, 62 N.W.2d 363 (1953), and *Hawkinson v. County of Itasca*, 304 Minn. 367, 231 N.W.2d 279 (1975), for the position that a plaintiff must demonstrate substantial progress in development or construction before a vested right accrues and the plaintiff can block the government's rezoning of the property involved. However, rezoning usually indicates a governmental intent that property be currently affected by the new zoning requirements. Thus, use of rezoning cases here would require the assumption that the repeal of section 500.20, subdivision 2 was intended to have a current effect on Mrs. Peterson's use of her lot by reviving the restrictive covenant, a fact which is yet to be decided. Moreover, the court in *Kiges* noted that zoning classifications and their retroactive applications were largely within the judgment of the legislature and a function of the state's police power. *Id.*, 240 Minn. at 531–35, 62 N.W.2d at 370–72. Where the issue is whether the state can be thwarted in an attempt to change land use for the public's benefit, this court will require vested rights to be established to a greater degree than when private rights to use of land are challenged by other private landowners.

Respondents contend that appellant never possessed any right to develop her land

after 1979, but only had a temporary privilege to do so, a privilege that ceased in 1982. However, Minn.Stat. § 500.20, subd. 2 (1980) states fairly clearly that covenants "shall cease to be valid and operative" after 30 years. These words denote termination, not suspension. Moreover, the statute did not permit an automatic renewal and, thus, we decline to assume that it did or write it into the statute. Any suggestion to the contrary in *Braaten v. Jarvi*, 347 N.W.2d 279 (Minn.Ct.App.1984) is overruled. These covenants became void in 1979 and remain void and cannot be resurrected.

The statute, the subject of this action, was adopted in 1937 and had as its purpose the object of removing restraints on the alienation of real estate. It was successfully so applied for 45 years until its repeal in 1982. The drafters, in 1937, felt compelled to provide that property restrictions should have some practical limitation; otherwise, some restrictions could persist forever unless all property owners affected approved their removal. The 30–year limitation allowed local governmental units future discretion to determine the long-term restrictions through zoning on property appropriate to its everyday use in changing times. Why the legislature repealed the statute, we do not know, but it certainly should address itself to the many problems that will be created by its repeal.

Both appellant and respondents contend that the opposing party is estopped from pressing suit by previous conduct. Appellant also makes a separate argument that the respondents previously waived their right to oppose the subdivision and new home. However, though appellant did present these arguments to the trial court, they are not mentioned in appellant's notice of appeal and respondents did not employ a notice of review. Since estoppel and waiver issues were not preserved as called for by Minn.R.Civ.App.P. 105.02 or 106 (1987), this court chooses not to hear them on appeal. *See Ford v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 294 N.W.2d 844, 845 (Minn.1980) (an issue not raised by

a party in its notice of review under Minn. R.Civ.App.P. 106 cannot be considered on appeal).

Accordingly, the court of appeals is reversed and the trial court is affirmed.

AMDAHL, C.J., and KELLEY and COYNE, JJ., took no part in the consideration or decision of this matter.